# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARAN COLEMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES RIVER LABORATORIES INTERNATIONAL, INC., JAMES C. FOSTER, DAVID R. SMITH, and FLAVIA PEASE,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Sharan Coleman ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Charles River Laboratories International, Inc. ("Charles River" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Charles River; and (c) review of other publicly available information concerning Charles River.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Charles River securities between May 5, 2020 and February 21, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Charles River is a full-service, non-clinical global drug development partner with a mission to create healthier lives. The Company has three reporting segments: Research Models and Services, Discovery and Safety Assessment, and Manufacturing Solutions. The Discovery and Safety Assessment segment accounts for approximately 60% of the Company's total revenue and offers, among other things, safety assessment studies required for regulatory submission of therapeutic solutions.

3.      On February 22, 2023, before the market opened, Charles River revealed that it had received a subpoena from the U.S. Department of Justice ("DOJ") relating to an ongoing investigation in conjunction with the U.S. Fish and Wildlife Service ("USFWS") into the supply chain and illegal importation of non-human primates for research. The Company noted that it was

voluntarily suspending shipments of primates from Cambodia, which would negatively impact its earnings for the year and would reduce revenue growth by 200 basis points to 400 basis points.

4.      On this news, Charles River's stock price fell $24.51, or 10%, to close at $219.09 per share on February 22, 2023, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Charles River had engaged in illegal activity with respect to its importation of non-human primates for research; (2)  that, as a result, Charles River was at a heightened risk of criminal and regulatory investigation by, *inter alia,* the U.S. Department of Justice; (3) that, as a result, Charles River would be forced to suspend shipments of primates from Cambodia; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud

or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.     Plaintiff Sharan Coleman, as set forth in the accompanying certification, incorporated by reference herein, purchased Charles River securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Charles River is incorporated under the laws of Delaware with its principal executive offices located in Wilmington, Massachusetts. Charles River's common stock trades on the New York Stock Exchange (the "NYSE") under the symbol "CRL."

13.     Defendant James C. Foster ("Foster") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant David R. Smith ("Smith") was the Company's Chief Financial Officer ("CFO") from August 2015 until May 2022.

15.     Defendant Flavia Pease ("Pease") has been the Company's Chief Financial Officer ("CFO") since May 2022.

16.     Defendants Foster, Smith, and Pease (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the

contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Charles River is a full-service, non-clinical global drug development partner with a mission to create healthier lives. The Company has three reporting segments: Research Models and Services, Discovery and Safety Assessment, and Manufacturing Solutions. The Discovery and Safety Assessment segment accounts for approximately 60% of the Company's total revenue and offers, among other things, safety assessment studies required for regulatory submission of therapeutic solutions.

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period begins on May 7, 2020.[1] On that day, the Company filed its Form 10-Q with the SEC for the quarter ended March 28, 2020 (the "1Q20 10-Q"). Therein, the Company stated, in relevant part:

_____

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

***Any failure by us to comply with applicable regulations and related guidance could harm our reputation and operating results, and compliance with new regulations and guidance may result in additional costs.***

Any failure on our part to comply with applicable regulations could result in the termination of ongoing research or the disqualification of data for submission on behalf of our clients to regulatory authorities. This could harm our reputation, our prospects for future work and our operating results. For example, the issuance of a notice of objectionable observations or a warning letter from the FDA based on a finding of a material violation affecting data integrity by us for GLP or cGMP requirements that are not addressed to the regulatory monitoring authorities' satisfaction could materially and adversely affect us. If our operations are found to violate any applicable law or other governmental regulations, we might be subject to civil and criminal penalties, damages and fines or the temporary closure of our facilities. Any action against us for violation of these laws or regulations, even if we successfully defend against it, could cause us to incur significant legal expenses, divert our management's attention from the operation of our business and damage our reputation.

*       *       *

***In addition, regulations and guidance worldwide concerning the production and use of research animals for research purposes continue to evolve. Similarly, guidance has been and continues to be developed for other areas that impact the biomedical research community on both a national and international basis including transportation, mandated contingency planning, euthanasia guidance, import and export requirements of biological materials, health monitoring requirements and the use of disinfectants.***

(First emphasis in original.)

19.     The 1Q20 10-Q also contained the following:

Although we believe we are currently in compliance in all material respects with applicable national, regional and local laws, as well as other accepted guidance used by oversight bodies (including the USDA, the standards set by the International Air Transport Association, the Convention on International Trade in Endangered Species of Wild Fauna and Flora, U.S. Fish and Wildlife Service, The Centers for Disease Control, the Department of Transportation, the Department of State, the office of Laboratory Animal Welfare of NIH, the Drug Enforcement Agency, as well as numerous other oversight agencies in the jurisdictions in which we operate), ***failure to comply could subject us to denial of the right to conduct business, fines, criminal penalties and other enforcement actions. In addition, if regulatory authorities were to mandate a significant reduction in safety assessment procedures that utilize laboratory animals (as has been advocated by certain groups), certain segments of our business could be materially adversely affected.***

20. The 1Q20 10-Q also contained the following risk related to large research models or research animals:

> ***Several of our product and service offerings are dependent on a limited source of supply that, when interrupted, adversely affects our business.***
>
> We depend on a limited international source of supply for certain products, such as large research models. Disruptions to their continued supply from time to time arise from health problems (including as a result of the COVID-19 pandemic and the spread of other diseases), export or import laws/restrictions or embargoes, tariffs, international trade regulations, foreign government or economic instability, severe weather conditions, increased competition among suppliers for models, disruptions to the air travel system, activist campaigns, commercial disputes, supplier insolvency, geopolitical disputes, measures intended to slow the spread of COVID-19 or other ordinary course or unanticipated events. ***Any disruption of supply could materially harm our business if we cannot remove the disruption or are unable to secure an alternative or secondary supply source on comparable commercial terms.*** For example, as with other industry participants, certain of our activities rely on a sufficient supply of large research models, which has seen increasing demand as compared to supply in 2020 due to a variety of factors. First, the surge of research relating to COVID-19 has increased short term demand. Second, China supplies a significant portion of certain critical large research models, which have been subject to geographic export restrictions applicable to many animal species since the beginning of the COVID-19 pandemic. While we continue to take steps to find alternative supply channels and lock in supply with preferred sources through multi-year and/or minimum commitment contracts, such mitigating efforts may not prove successful at ensuring a steady and timely supply or may require (and in the past have required) us to pay significantly higher prices for such products during periods of global shortage or restrictions on the transportation of products. In addition, limited global supply or regional restrictions on transportation for certain products may require us to source products from non-preferred vendors.

(First emphasis in original.)

21. On February 17, 2021, the Company filed its Form 10-K with the SEC for the fiscal year ended December 26, 2020. It warned that "Any failure by us to comply with applicable regulations and related guidance could harm our reputation and operating results, and compliance with new regulations and guidance may result in additional costs." Specifically, it purported to warn that:

Although we believe we are currently in compliance in all material respects with applicable national, regional and local laws, as well as other accepted guidance used by oversight bodies (including the USDA, the standards set by the International Air Transport Association, the Convention on International Trade in Endangered Species of Wild Fauna and Flora, U.S. Fish and Wildlife Service, The Centers for Disease Control, the Department of Transportation, the Department of State, the office of Laboratory Animal Welfare of NIH, the Drug Enforcement Agency, as well as numerous other oversight agencies in the jurisdictions in which we operate), failure to comply could subject us to denial of the right to conduct business, fines, criminal penalties and other enforcement actions. ***In addition, if regulatory authorities were to mandate a significant reduction in safety assessment procedures that utilize laboratory animals (as has been advocated by certain groups), certain segments of our business could be materially adversely affected.***

22.     On February 16, 2022, the Company filed its Form 10-K with the SEC for the fiscal year ended December 25, 2021 in which it once again stated:

Although we believe we are currently in compliance in all material respects with applicable national, regional and local laws, as well as other accepted guidance used by oversight bodies (including the USDA, the standards set by the International Air Transport Association, the Convention on International Trade in Endangered Species of Wild Fauna and Flora, U.S. Fish and Wildlife Service, The Centers for Disease Control, the Department of Transportation, the Department of State, the office of Laboratory Animal Welfare of NIH, the Drug Enforcement Agency, as well as numerous other oversight agencies in the jurisdictions in which we operate), ***failure to comply could subject us to denial of the right to conduct business, fines, criminal penalties and other enforcement actions. In addition, if regulatory authorities were to mandate a significant reduction in safety assessment procedures that utilize research animals (as has been advocated by certain groups), certain segments of our business could be materially adversely affected.***

23.     The above statements identified in ¶¶ 18-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Charles River had engaged in illegal activity with respect to its importation of non-human primates for research; (2) that, as a result, Charles River was at a heightened risk of criminal and regulatory investigation by, *inter alia,* the U.S. Department of Justice; (3) that, as a result, Charles River would be forced to suspend shipments of primates from Cambodia; and (4) that, as a result of the foregoing,

Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

24.     On February 22, 2023, before the market opened, the Company issued a press release announcing its fourth quarter and full year 2022 financial results.  Therein, Charles River revealed that it had received a subpoena from the DOJ relating to an ongoing investigation in conjunction with the USFWS into the supply chain and illegal importation of non-human primates for research, stating:

### U.S. Department of Justice Investigation into Non-Human Primate Supply Chain

On February 17th, the Company received a subpoena from the U.S. Department of Justice relating to an investigation into the Cambodian non-human primate (NHP) supply chain. The Company has been informed that this investigation relates specifically to several shipments of NHPs received by Charles River from its Cambodian supplier. Charles River intends to fully cooperate with the U.S. government as part of their investigation. Due to ongoing investigations and the heightened focus on the Cambodian NHP supply chain in recent months, Charles River has voluntarily suspended NHP shipments from Cambodia at this time.

25.     The same day, the Company filed its annual report on Form 10-K for the period ended December 31, 2022, elaborating as follows:

On February 16, 2023, the Company was informed by the U.S. Department of Justice (DOJ) that in conjunction with the U.S. Fish and Wildlife Service (USFWS), it had commenced an investigation into the Company's conduct regarding several shipments of non-human primates from Cambodia. On February 17, 2023 the Company received a grand jury subpoena requesting certain documents related to such investigation. The Company is aware of a parallel civil investigation being undertaken by the DOJ and USFWS. The Company is cooperating with the DOJ and the USFWS and believes that the concerns raised with respect to the Company's conduct are without merit. The Company maintains a global supplier onboarding and oversight program incorporating risk-based due diligence, auditing, and monitoring practices to help ensure the quality of our supplier relationships and compliance with applicable U.S. and international laws and regulations, and has operated under the belief that all shipments of non-human primates it received satisfied the material requirements, documentation and related processes and procedures of the Convention on International Trade in Endangered Species of

8

Wild Fauna and Flora (CITES) documentation and related processes and procedures, which guides the release of each import by USFWS. Notwithstanding our efforts and good-faith belief, in connection with the civil investigation, the Company has voluntarily suspended future shipments of non-human primates from Cambodia until such time that the Company and USFWS can agree upon and implement additional procedures to reasonably ensure that non-human primates imported to the United States from Cambodia are purpose-bred. While these discussions with USFWS are ongoing, the Company has also agreed to continue to care for the Cambodia-sourced non-human primates from certain recent shipments that are now in the United States. We are not able to predict what action, if any, might be taken in the future by the DOJ, USFWS or other governmental authorities as a result of the investigations. Neither the DOJ nor USFWS has provided the Company with any specific timeline or indication as to when these investigations or discussions regarding future processes and procedures will be concluded or resolved. Because it is in the early stages, the Company cannot predict the timing, outcome or possible impact of the investigations, including without limitation any potential fines, penalties or liabilities.

26.     That same day, during an earnings call with investors, Defendant Foster stated that the "he investigation in current NHP supply situation will result in study delays in our Safety Assessment business." He further stated that the investigation into the Cambodian non-human primate ("NHP") supply chain would reduce the annual revenue forecast by approximately 200 basis points to 400 basis points, stating:

The current Cambodian NHP supply constraints and the corresponding impact to our Safety Assessment business are expected to reduce our consolidated revenue growth forecast by approximately 200 basis points to 400 basis points this year, resulting in organic revenue growth guidance of 4.5% to 7.5% for the total company.

The non-GAAP earnings per share are expected to be in a range of $9.70 to $10.90 in 2023 with the wider ranges encompassing a number of scenarios related to the timing of the resumption of Cambodian NHP imports this year. The top end of our guidance ranges anticipate that we will have Cambodian NHPs available for studies in the fourth quarter, whereas the bottom end of our guidance assumes that we will have no Cambodian NHP imports for the remainder of 2023. In either case, we expect to begin to experience a more meaningful impact from NHP supply constraints in the second quarter.

27.     On this news, Charles River's stock price fell $24.51, or 10%, to close at $219.09 per share on February 22, 2023, on unusually heavy trading volume.

28.     On March 1, 2023, *The Washington Post* published an article linking the investigation to a November 2022 indictment of a monkey-smuggling ring. The article stated, in relevant part:

> Cambodia has emerged as the largest international source of monkeys used in U.S. research, after China stopped exporting primates during the pandemic. Imported monkeys must meet various international and U.S. regulatory requirements. The investigation into Cambodian monkeys centers on the question of whether they were bred in captivity, as permits stated.

> In November, eight people, including two Cambodian government officials, were indicted on charges of allegedly capturing wild long-tailed macaques, which are endangered, from national parks and protected areas and falsifying permits amid a shortage of monkeys at the breeding facilities. As the investigation continues, shipments of primates from Cambodia have been paused.

> *     *     *

> Contract research organizations, such as Charles River Laboratories International, Inotiv and Laboratory Corporation of America, provide primates to drug companies as well as academic and government scientists, and they rely on multiple sources, including international suppliers.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Charles River securities between May 5, 2020 and February 21, 2023, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Charles River's shares actively traded on the NYSE.

While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Charles River shares were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Charles River or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.      Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.      Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.      Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)      whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Charles River; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### UNDISCLOSED ADVERSE FACTS

35.     The market for Charles River's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Charles River's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Charles River's securities relying upon the integrity of the market price of the Company's securities and market information relating to Charles River, and have been damaged thereby.

36.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Charles River's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Charles River's business, operations, and prospects as alleged herein.

37.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Charles River's financial well-being and prospects.  These material

misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

38.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

39.    During the Class Period, Plaintiff and the Class purchased Charles River's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

40.    As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Charles River, their control over, and/or receipt and/or modification of Charles River's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential

proprietary information concerning Charles River, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

41.     The market for Charles River's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Charles River's securities traded at artificially inflated prices during the Class Period. On September 24, 2021, the Company's share price closed at a Class Period high of $458.30 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Charles River's securities and market information relating to Charles River, and have been damaged thereby.

42.     During the Class Period, the artificial inflation of Charles River's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Charles River's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Charles River and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

43.     At all relevant times, the market for Charles River's securities was an efficient market for the following reasons, among others:

(a)     Charles River shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Charles River filed periodic public reports with the SEC and/or the NYSE;

(c)     Charles River regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Charles River was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

44.     As a result of the foregoing, the market for Charles River's securities promptly digested current information regarding Charles River from all publicly available sources and reflected such information in Charles River's share price. Under these circumstances, all purchasers of Charles River's securities during the Class Period suffered similar injury through their purchase of Charles River's securities at artificially inflated prices and a presumption of reliance applies.

45.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information

that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Charles River who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

47.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Charles River's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

49.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Charles River's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Charles River's financial well-being and prospects, as specified herein.

51.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Charles River's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Charles River and its business operations

and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

52.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

53.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Charles River's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations,

financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

54.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Charles River's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Charles River's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Charles River was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Charles River securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

56.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

58.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.     Individual Defendants acted as controlling persons of Charles River within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

61.     As set forth above, Charles River and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 19, 2023                 **ANDREWS DEVALERIO LLP**

By: */s/ Daryl Andrews*
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
P.O. Box 67101
Chestnut Hill, MA 02467
Telephone: (617) 999-6473
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

21

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Attorneys for Plaintiff Sharan Coleman*