**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE TEACHERS RETIREMENT SYSTEM OF OHIO, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CHARLES RIVER LABORATORIES INTERNATIONAL, INC., JAMES C. FOSTER, and DAVID R. SMITH,<br><br>        Defendants. | Honorable Denise J. Casper<br>Case No. 1:23-cv-11132-DJC<br><br>Leave to file granted on January 10, 2024 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

Mara Theophila (BBO #704763)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
(617) 535-4000
mtheophila@mwe.com

Charles S. Duggan (admitted *pro hac vice*)
David B. Toscano (admitted *pro hac vice*)
Luca Marzorati (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
charles.duggan@davispolk.com
david.toscano@davispolk.com
luca.marzorati@davispolk.com

*Attorneys for Defendants Charles River*
*Laboratories International, Inc., James C.*
*Foster, and David R. Smith*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ....................................................................................................................... 5

    A.  Charles River ................................................................................................... 5

    B.  Charles River's Public Statements During the Class Period ......................................... 5

        1.  Disclosures of Risks Regarding Legal Compliance, and Charles River's Codes of Conduct ................................................................................................ 5

        2.  Disclosures Regarding Supply Chain of Macaques, Including Risk Disclosures .. 6

    C.  Alleged Corrective Disclosures ................................................................................. 8

    D.  Plaintiff's Theories of Falsity ................................................................................... 9

    E.  Procedural Posture ................................................................................................. 10

ARGUMENT ........................................................................................................................... 10

    I.  LEGAL STANDARDS ............................................................................................ 10

    II.  PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION .......... 12

    A.  No Actionable Disclosure Regarding Charles River's Supply Chain ........................ 12

    B.  Charles River's Statements Regarding Compliance with Law, Including Its Codes of Conduct, Are Not Actionable ................................................................................ 16

    III.  PLAINTIFF FAILS TO PLEAD AN INTENT TO DEFRAUD INVESTORS ............... 18

    A.  Plaintiff Fails to Establish Scienter Through Stock Sales and Gifts ......................... 18

    B.  Plaintiff Otherwise Fails to Plead a "Strong Inference" of Scienter ......................... 19

    IV.  PLAINTIFF FAILS TO PLEAD LOSS CAUSATION ................................................ 21

    V.  PLAINTIFF'S SECTION 20(A) CLAIMS SHOULD BE DISMISSED ........................ 23

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Akamai Techs., Inc. v. Deutsche Bank AG*,
764 F. Supp. 2d 263 (D. Mass. 2011) ...................................................................................... 24

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................................................................. 11

*Auto. Indus. Pension Tr. Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012) ...................................................................................................... 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................................. 11

*In re Biogen Inc. Sec. Litig.*,
193 F. Supp. 3d 5 (D. Mass. 2016), *aff'd*, 857 F.3d 34 (1st Cir. 2017) ............................ 14, 17

*In re Bos. Sci. Corp. Sec. Litig.*,
646 F. Supp. 3d 249 (D. Mass. 2022) ....................................................................................... 24

*In re Bos. Sci. Corp. Sec. Litig.*,
686 F.3d 21 (1st Cir. 2012) ....................................................................................................... 19

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*,
2023 WL 4706741 (D. Mass. July 24, 2023) ........................................................................... 21

*City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*
46 F.4th 22 (1st Cir. 2022) .......................................................................................... 11, 16, 24

*Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*,
22 F.4th 1 (1st Cir. 2021) .......................................................................................................... 13

*Coyne v. Metabolix, Inc.*,
943 F. Supp. 2d 259 (D. Mass. 2013) ....................................................................................... 22

*Credit Suisse Sec. (USA) LLC v. Billing*,
551 U.S. 264 (2007) .................................................................................................................. 11

*Ferris v. Wynn Resorts, Ltd.*,
462 F. Supp. 3d 1101 (D. Nev. 2020) ....................................................................................... 18

*Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015) ..................................................................................................... 19

*Greebel v. FTP Software, Inc.*,
194 F.3d 185 (1st Cir. 1999) ..................................................................................................... 19

*Indiana State Dist. Council of Laborers & Hod Carriers Pension &*
  *Welfare Fund v. Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ................................................................................ 17

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ................................................................................ 17

*Leung v. bluebird bio, Inc.*,
  599 F. Supp. 3d 49 (D. Mass. 2022) ........................................................ 11, 12, 21, 22

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) ..................................................................... 18

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ................................................................................ 23

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
  716 F.3d 229 (1st Cir. 2013) ......................................................................... 22, 23, 24

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) ............................................................................. 23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  575 U.S. 175 (2015) ............................................................................................. 13

*Ponsa-Rabell v. Santander Sec. LLC*,
  35 F.4th 26 (1st Cir. 2022) ............................................................................... 11, 15

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*
  769 F.3d 313 (5th Cir. 2014) ................................................................................ 23

*Pyramid Holdings, Inc. v. Inverness Medical Innovations Inc.*,
  638 F. Supp. 2d 120 (D. Mass. 2009) ...................................................................... 15

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
  845 F.3d 1268 (9th Cir. 2017) ............................................................................... 18

*Shash v. Biogen, Inc.*,
  84 F.4th 1 (1st Cir. 2023) ..................................................................................... 21

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ................................................................................. 14

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019) ................................................................................... 18

*Sousa v. Sonus Networks, Inc.*,
  261 F. Supp. 3d 120 (D. Mass. 2017) ...................................................................... 20

*Special Situations* Fund *III, L.P. v. Am. Dental Partners, Inc.*,
  775 F. Supp. 2d 227 (D. Mass. 2011) ...................................................................... 24

*In re Syntex Corp. Sec. Litig.*,
    95 F.3d 922 (9th Cir. 1996) ...................................................................................... 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 12, 17

*Toussaint v. Care.com Inc.,*
    490 F. Supp. 3d 352 (D. Mass. 2020) ......................................................................... 21

*Tutor Perini Corp. v. Banc of Am. Sec. LLC*,
    842 F.3d 71 (1st Cir. 2016) ........................................................................................16

*Yan v. ReWalk Robotics Ltd.*,
    973 F.3d 22 (1st Cir. 2020) ...................................................................................... 14

### STATUTES & RULES

15 U.S.C. § 78t(a) ...................................................................................................... 24

15 U.S.C. § 78u-4(b)(1) .............................................................................................. 11

15 U.S.C. § 78u-5(c)(1)(A)(i) ..................................................................................... 14

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 10, 11

iv

## PRELIMINARY STATEMENT

The Amended Complaint fails in its attempt to manufacture a securities fraud lawsuit out of a disruption to the supply chain of defendant Charles River Laboratories International, Inc. ("Charles River" or the "Company"), and accordingly should be dismissed.

On February 22, 2023, Charles River disclosed to investors that the U.S. government had opened an investigation into shipments of long-tailed macaques ("macaques") that Charles River had imported from Cambodia for use in safety assessments for new drug development, and that the U.S. Fish & Wildlife Service ("FWS") had not cleared certain of Charles River's shipments of Cambodian macaques for importation into the United States. Charles River imports macaques from Cambodia pursuant to Cambodian export permits for animals raised in captivity ("purpose-bred"), as opposed to animals caught in the wild. Charles River also disclosed that it had voluntarily suspended future imports of macaques from Cambodia pending new procedures to ensure that macaques imported from Cambodia were purpose-bred. The Company warned that these developments affecting its macaque supply were expected to reduce its revenue growth.

The prior November, the U.S. government had unsealed an indictment that accused two Cambodian government officials and six executives of a Southeast Asian macaque supplier— Vanny Group ("Vanny")—of illegally importing wild-caught Cambodian macaques into the United States. At that time, Charles River advised investors that it did not have any direct supply contracts with the Cambodian supplier whose executives were indicted. There are no allegations connecting the indicted individuals or the alleged illegality to Charles River.

Plaintiff contends that Charles River intentionally defrauded investors throughout the alleged May 7, 2020 to March 15, 2023 class period. Plaintiff asserts that the Company lied to investors by stating that it believed that it materially complied with applicable laws, and by purportedly falsely implying that it procured macaques only from "preferred" suppliers, whereas

Plaintiff claims that it also bought some monkeys from "non-preferred" suppliers.  Plaintiff contends that, beginning in November 2022, information regarding the supply of macaques, including as to other importers, and Charles River's own disclosures, revealed those purported lies to be false, and that Plaintiff was harmed when Charles River's stock price allegedly declined as a result.

These allegations fail to state a claim for securities fraud.  They fall far short of the high pleading standard for Plaintiff's claim under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), because the Amended Complaint's allegations do not show that Charles River intentionally sought to defraud investors by making false or misleading statements that were later revealed to be false and thereby harmed investors.

*First*, Plaintiff fails to plead facts showing that any statement by the Company was false or misleading.  There are no well-pled allegations that Charles River lied when it said that it believed that it was in material compliance with applicable laws.  Courts repeatedly have held that aspirational statements of this type are not fraudulent merely because a securities issuer is later found to have violated the law—and, indeed, the Amended Complaint does not plead any violation of import laws by Charles River.  Plaintiff's allegations that other individuals unrelated to Charles River have been charged with smuggling macaques from Cambodia are inadequate to establish any violation by Charles River, much less any knowledge by Charles River of problems with macaques it imported.  The government investigation and refusals by FWS to clear certain imports similarly fail to show that any statement made by Charles River prior to reporting those developments was false or was made with the intention of defrauding investors about known risks to its supply chain of macaques.

To the contrary, as the Amended Complaint makes clear, Charles River warned investors throughout the alleged class period about the risks of disruption to the limited worldwide supply

of macaques, and discussed the steps it was taking to mitigate those risks.  Charles River also repeatedly warned investors of potential risks if it failed to comply with the laws governing the Company's operations, including the importation of macaques.  Plaintiff asserts that Charles River misled investors by warning them that "limited global supply or regional restrictions on transportation for certain products may require us to source products from non-preferred vendors," because, Plaintiff asserts, the warning implied that Charles River was not purchasing macaques from non-preferred vendors.  But this statement cannot plausibly be construed to mean that Charles River had never purchased from a non-preferred vendor.

*Second*, Plaintiff does not allege facts establishing the necessary "strong inference" that Charles River made any of the challenged statements with the intention to defraud investors ("scienter").  Charles River's warning that it might be required to source products from "non-preferred" vendors demonstrates that the Company was being transparent, not attempting to mislead the market.  Plaintiff theorizes that Charles River's Chief Executive Officer, James Foster, and its then-Chief Financial Officer, David R. Smith, were motivated to lie about Charles River's imports of macaques, because they sold or made gifts of Charles River stock during the class period.  But the Amended Complaint provides no basis to think that those sales or gifts were unusual or were suspiciously timed relative to their statements or anything that they had learned about Charles River's imports of macaques from Cambodia, as would be minimally necessary to infer scienter from those sales.

*Third*, the Amended Complaint fails to demonstrate that the claimed declines in the price of Charles River's stock from November 16, 2022 to March 15, 2023 were caused by revelations that the Company had deceived investors ("loss causation").  None of the alleged "corrective" disclosures revealed that Charles River's prior statements about its belief that it was in material

compliance with the law and that supply constraints might require it to rely on "non-preferred" vendors were false or misleading.

The new information that Charles River supplied on February 22, 2023 did not indicate that it had "known all along" that it was not materially complying with the law. The disclosure of an investigation is not a disclosure of violations of law, as courts have repeatedly recognized—much less a revelation that a prior statement of belief of material legal compliance was false when made. Neither is the refusal by FWS to clear certain shipments, or Charles River's voluntary suspension of Cambodian shipments. Nor did these statements reveal any supposedly concealed purchases from "non-preferred vendors." They gave no indication that the government's actions had anything to do with purchases from "non-preferred vendors." Nor does the Amended Complaint allege any connection between those actions and Charles River's purchases from "non-preferred vendors." Plaintiff does not allege that the shipments to Charles River being investigated came from "non-preferred vendors." And Charles River's suspension of imports from Cambodia was necessarily a suspension of imports from "preferred" vendors.

Plaintiff's failure to plead each of these essential elements of a securities fraud claim—falsity, scienter and loss causation—requires dismissal of its claim under Section 10(b) and, as a result, also requires dismissal of Plaintiff's claim of control person liability under Section 20 of the Exchange Act. Accordingly, the Court should dismiss the Amended Complaint with prejudice.

4

<u>**BACKGROUND**</u>[1]

### A.      Charles River

Charles River is the leading global non-clinical drug development partner and participates in research and development of new life-saving drugs, devices and therapies.  *See* Compl. ¶ 69.[2] Mr. Foster serves as its Chairman, President and Chief Executive Officer.  *Id.* ¶ 64.  Mr. Smith served as Chief Financial Officer of Charles River from August 2015 until May 2022.  *Id*. ¶ 66.

### B.      Charles River's Public Statements During the Class Period

#### 1.      Disclosures of Risks Regarding Legal Compliance, and Charles River's Codes of Conduct

Among the risks about which Charles River regularly warned investors, Charles River disclosed the risks associated with failure to comply with applicable law:

> **Any failure by us to comply with applicable regulations and related guidance could harm our reputation and operating results, and compliance with new regulations and guidance may result in additional costs.**
>
> . . . If our operations are found to violate any applicable law or other governmental regulations, we might be subject to civil and criminal penalties, damages and fines or the temporary closure of our facilities.  Any action against us for violation of these laws or regulations, even if we successfully defend against it, could cause us to incur significant legal expenses, divert our management's attention from the operation of our business and damage our reputation. . . .
>
> Although we believe we are currently in compliance in all material respects with applicable national, regional and local laws, as well as other accepted guidance used by oversight bodies (including … the standards set by . . . the Convention on International Trade in Endangered Species of Wild Fauna and Flora [("CITES")], [FWS] . . .), failure to comply could subject us to denial of the right to conduct business, fines, criminal penalties and other enforcement actions.

*Id*. ¶¶ 149, 264.  Charles River included or incorporated these warnings into its filings with the Securities and Exchange Commission ("SEC") throughout the alleged class period.

---

[1] Unless otherwise indicated, emphasis has been added to quotations, and internal quotations, brackets, ellipses, citations, and footnotes have been omitted.

[2] Cites in the form "Compl. ¶ _" are to paragraphs of the Amended Complaint filed on November 14, 2023, Dkt. No. 36.  Cites in the form "Ex. _" are to the declaration of Charles S. Duggan accompanying this brief.

Charles River posted its Code of Business Conduct and Ethics on its website during the class period.  It identifies "[c]ompliance with legal requirements" as "central to our success," and states that "we expect our suppliers … to comply with the … legal standards described in the Code."  *Id*. ¶ 194.  The Code states that "[w]e must comply with the international agreements and conventions," "[b]e truthful and accurate in all representations … to government agencies," and "make sure that all information furnished to any customs officials … is accurate and truthful."  *Id*. ¶ 195.  The Code also provides that "we must all be vigilant in meeting and going beyond our responsibilities to comply with relevant laws and regulations."  *Id*.  Charles River's Supplier Code of Conduct, which it also published, states that suppliers "will comply with all applicable laws and regulations of the countries of their operations," and "will exercise responsible sourcing in the supplier's supply chain."  *Id*. ¶ 200.

### 2. Disclosures Regarding Supply Chain of Macaques, Including Risk Disclosures

Charles River regularly warned investors of the risks of supply interruption:

**Several of our product and service offerings are dependent on a limited source of supply that, when interrupted, adversely affects our business.**

We depend on a limited international source of supply for certain products, such as large research models [i.e., animals such as macaques].  Disruptions to their continued supply from time to time arise from health problems (including as a result of the COVID-19 pandemic and the spread of other diseases), export or import laws/restrictions or embargoes, tariffs, international trade regulations, foreign government or economic instability, severe weather conditions, increased competition among suppliers for models, disruptions to the air travel system, activist campaigns, commercial disputes, supplier insolvency, geopolitical disputes, measures intended to slow the spread of COVID-19 or other ordinary course or unanticipated events. Any disruption of supply could materially harm our business if we cannot remove the disruption or are unable to secure an alternative or secondary supply source on comparable commercial terms.  While we continue to take steps to find alternative supply channels and lock in supply with preferred sources through multi-year and/or minimum commitment contracts, such mitigating efforts may not prove successful at ensuring a steady and timely supply or may require (and in the past have required) us to pay significantly higher prices for such products during periods of global shortage or restrictions on the transportation of products. In addition, limited

global supply or regional restrictions on transportation for certain products may require us to source products from non-preferred vendors.

Compl. ¶¶ 145, 157, 170, 184, 213, 226, 244, 262, 276, 283, 305.  Charles River included or incorporated substantially similar warnings into its SEC filings throughout the alleged class period.

In addition, Charles River regularly made other disclosures about its supply chain to investors.  Many of these disclosures related to the Company's responses to the COVID-19 pandemic, including the following statements:

- the Company "ha[s] and expect[s] to continue to increase inventory and supplies through the second quarter of 2020 and beyond as deemed appropriate," Compl. ¶ 143; *see also id.* ¶ 157 (Q2 2020 10-Q); *id.* ¶ 168 (Q3 2020 10-Q); *id.* ¶ 260 (2021 10-K);

- the Company "proactively engaged with our suppliers beginning in January 2020 to limit any potential disruption to our supply chain," *id.* ¶ 143; *see also id.* ¶ 157 (Q2 2020 10-Q); *id.* ¶ 168 (Q3 2020 10-Q); and

- "[t]he COVID-19 pandemic has caused us to modify our business practices, including … suppliers … supply chain risk management" and that "[s]uch measures and others may not be sufficient to mitigate all the risks posed by COVID-19, and our ability to perform critical functions could be materially adversely affected," *id.* ¶ 147; *see also id.* ¶ 157 (Q2 2020 10-Q); *id.* ¶ 172 (Q3 2020 10-Q); *id.* ¶ 184 (2020 10-K); *id.* ¶¶ 213, 226, 244.

Throughout the alleged class period, Mr. Foster updated investors about the Company's supply chain for non-human primates ("NHPs"), which include macaques.  On August 5, 2020, for example, Mr. Foster stated: "I think we've done a very good job ensuring that we have sufficient products to do our work . . . . So we feel really good about supply chain for the balance of this year, and we'll be very well prepared for next year as well."  *Id.* ¶ 161.  On October 29, 2020, Mr. Foster stated that "we work really hard to have multiple supply sources from multiple geographies and multiple suppliers within those geographies and have close working relationships with them."  *Id.* ¶ 176.

On February 17, 2021, Mr. Foster stated, "I think we've done an exceptional job in adding, ensuring, tightening up, expanding our supply sources so that we have multiple supply sources for

multiple countries such that we can support the [quite significant] demand." *Id*. ¶ 203; *see also*, *e.g.*, *id*. ¶ 236 (Sept. 14, 2021) ("[W]e've been doing a really good job in supply chain.").

On November 16, 2022, the U.S. government unsealed an indictment of two Cambodian officials and six executives of Vanny—a corporate group comprising affiliated corporations involved in exporting macaques from Southeast Asia. *Id*. ¶¶ 314–322. On November 30, 2022, Charles River disclosed that it "does not have any direct supply contracts with the indicted Cambodian supplier." *Id*. ¶ 326.

### C.    Alleged Corrective Disclosures

Plaintiff alleges that "the truth about Charles River's misconduct was revealed through a series of partial disclosures" between November 16, 2022 and March 15, 2023. *Id*. ¶ 383.

The first alleged corrective disclosure is the November 16, 2022 unsealing of the Vanny indictment. The indictment referred to unindicted co-conspirators, which allegedly are Worldwide Primates, Inc. ("Worldwide") and Inotiv, Inc. ("Inotiv"). *See id*. ¶ 31.[3]

The second alleged corrective disclosure is Charles River's November 30, 2022 disclosure that "the Company does not have any direct supply contracts with the indicted Cambodian supplier." *Id*. ¶ 326. Charles River also disclosed its "expectation that for some time period supply of Cambodia-sourced NHPs will be difficult to obtain in the United States." *Id*.

The third alleged corrective disclosure is a January 12, 2023 research report by investment advisory firm Jeffries which estimated that Charles River was obtaining some NHPs from Vanny indirectly through other suppliers. *Id*. ¶¶ 43, 338.

The fourth alleged corrective disclosure is Charles River's February 22, 2023 disclosure

---

[3] Inotiv acquired Envigo on November 5, 2021, and acquired OBRC on January 27, 2022. Compl. ¶ 126. This was near the end of the alleged conspiracy (December 19, 2017 to January 30, 2022) and the alleged smuggling (July 25, 2018 to December 17, 2021). *See id*. Ex. A at 6, 16.

that it had received a subpoena from the U.S. Department of Justice ("DOJ") relating to a govern-

ment investigation into certain shipments of Cambodian macaques to Charles River.  *Id*. ¶ 47.

Charles River also disclosed that FWS had refused to clear certain of such shipments; that Charles

River had voluntarily suspended its shipments of NHPs from Cambodia; and that it would continue

to care for macaques from the blocked shipments.  *Id*. ¶¶ 48, 345.

The fifth alleged corrective disclosure is Mr. Foster's March 15, 2023 statement:

> There are a couple of companies that sort of brokers that get animals from wherever. We have used those folks to some extent historically. I'm trying to be careful picking my words here. We prefer not to use them. Reputationally, I just don't think they're the best possible people to use. And I don't actually think they care where the animals come from or what the background is and they've been kind of inappropriate with pricing.

*Id*. ¶ 50.

Charles River's stock price declined on the days of these disclosures.

### D.    Plaintiff's Theories of Falsity

Plaintiff contends that Charles River's statements about its supply chain during the alleged

class period were false or misleading.  Plaintiff contends that Charles River failed to disclose it

was engaging "non-preferred suppliers of animals from Cambodia."  *Id*. ¶ 142.  Plaintiff labels

Orient BioResource Center, Inc. ("OBRC") and Envigo Global Services, Inc. ("Envigo") as "non-

preferred suppliers."  *Id*. ¶ 146.[4]  Plaintiff asserts that buying from these suppliers put Charles

River at increased risk that animals acquired from these suppliers were not purpose-bred; that the

Company would be subject to heightened scrutiny including criminal and civil investigations; and

that the Company's supply chain of macaques would be interrupted.  *Id*. ¶¶ 146, 237.  Plaintiff

claims that Charles River's warning that it "may" source products from "non-preferred vendors"

---

[4] Plaintiff also labels Vanny a "non-preferred supplier," but does not allege that Charles River purchased Cambodian macaques from Vanny.  *Id*. ¶ 237.  Instead, Plaintiff alleges that Charles River *indirectly* obtained macaques from Vanny Cambodia through Envigo, OBRC or Worldwide.  *Id.* ¶ 39.

9

was false because "the Company had at that time already engaged non-preferred suppliers." *Id*. ¶ 146.

Plaintiff also challenges Charles River's statement that it had no "direct supply contracts" with the Cambodian supplier (Vanny Cambodia) whose executives were charged in the November 2022 indictment. *Id*. ¶ 331. Plaintiff contends that this statement was false and misleading because Charles River had purchased "macaques from the Vanny Group through the unnamed co-conspirators in the Indictment, Worldwide Primates and Inotiv through Envigo and [OBRC]" and had acquired macaques "from other companies within the Vanny Group." *Id*.

### E.    Procedural Posture

Plaintiff Sharan Coleman first filed this action on May 19, 2023. Dkt. No. 1. On August 31, 2023, the Court allowed the motion of State Teachers Retirement System of Ohio for appointment as Lead Plaintiff. Dkt. No. 25. Plaintiff filed the Amended Complaint on November 14, 2023. Dkt. No. 36.

## ARGUMENT

### I.    LEGAL STANDARDS

Under Rule 12(b)(6), the Court should dismiss a complaint that does not "state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include sufficient factual allegations that, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To state a claim for securities fraud under Section 10(b) of the Exchange Act, a plaintiff must adequately plead (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013). To support a claim

10

for securities fraud, allegedly false statements "must be false when made." *City of Miami Fire Fighters' & Police Officers' Ret. Tr. v. CVS Health Corp.*, 46 F.4th 22, 30 (1st Cir. 2022).

A plaintiff cannot state a securities fraud claim simply by alleging that an issuer has omitted to disclose material information: "Generally, an omission is actionable [as securities fraud] only where there is an affirmative duty to disclose. Plaintiffs carry the burden of showing that defendants omitted to state a material fact necessary to make a statement not misleading. The mere possession of material, nonpublic information does not create a duty to disclose it." *Ponsa-Rabell v. Santander Sec. LLC*, 35 F.4th 26, 34 (1st Cir. 2022).

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Section 10(b) claims face heightened pleading requirements to "weed out unmeritorious securities lawsuits" at the outset. *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264, 284 (2007); *see Leung v. bluebird bio, Inc.,* 599 F. Supp. 3d 49, 56 (D. Mass. 2022) (Casper, J.) ("[C]ourts engage in a particularized scrutiny of private securities complaints."). A complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

To plead the requisite intent to defraud, the PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter or fraudulent intent. 15 U.S.C. § 78u–4(b)(2)(A); *see*, *e.g.*, *bluebird bio*, 599 F. Supp. 3d at 62. Under the PSLRA, a "strong inference" of fraudulent intent means that "a complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Thus, in evaluating a securities class action complaint, courts "must take into account plausible opposing inferences." *Id.* at 323.

11

## II.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION

### A.    No Actionable Disclosure Regarding Charles River's Supply Chain

The Amended Complaint's principal contention is that Charles River failed to disclose that "Charles River engaged non-preferred suppliers of animals from Cambodia."  Compl. ¶ 13; *see also id.* ¶¶ 142, 144, 146, 148, 150, 162, 177, 189, 192, 196–198, 201, 222, 237.  Plaintiff asserts that sourcing from "non-preferred" Cambodian suppliers made it "very likely" that Charles River obtained wild-caught macaques, which "materially increased" the risk of investigations and supply chain disruption.  *Id.*; *see also supra* at 9–10.  But the Amended Complaint fails to show that Charles River's statements about its macaque supply chain were in any way materially false or misleading.

Plaintiff has failed to plead facts showing that any statement was false or misleading when made.  For example, Plaintiff does not allege that Charles River had not taken "steps to find alternative supply channels and lock in supply with preferred sources through multi-year and/or minimum commitment contracts to ensure steady and timely supply" and "proactively engag[e] with [its] suppliers beginning in January 2020 to limit any potential disruption to [its] supply chain."  Compl. ¶¶ 11, 143, 168.

Nor does Plaintiff allege any facts showing that Charles River purchased macaques from any "non-preferred vendors" during the alleged class period.  Plaintiff seizes on a March 15, 2023 statement by Mr. Foster about brokers "that get animals from wherever" and which "[w]e have used … to some extent historically" but which "[w]e prefer not to use."  *Id.* ¶ 50.  That the Company "prefer[red] not to use" certain brokers is precisely what Charles River conveyed in stating that it sought to use "preferred" vendors.  *See supra* at 6–7.  There is no suggestion that Charles River regarded "non-preferred vendors" as posing a higher risk of illegality.  Nor does Mr. Foster's

12

statement that Charles River used certain brokers "to some extent historically" suggest any use of such brokers during the alleged class period.

Likewise, the Amended Complaint fails to allege facts impugning Charles River's statement that it had no "direct supply contracts" with "the indicted Cambodian supplier"—i.e., Vanny Cambodia. Compl. ¶¶ 37, 326, 327. Indeed, the Amended Complaint alleges that Charles River obtained macaques from Vanny *indirectly* "through" Worldwide, Envigo and OBRC. *Id.* ¶ 331.

Some of the challenged disclosures are opinions which are not actionable as a matter of law. A statement of opinion can be false or misleading only if (1) the speaker does not sincerely hold the expressed belief; (2) the belief does not fairly align with the facts known to the speaker; or (3) the speaker has not made the type of inquiry that a reasonable investor would expect given the circumstances. *See Constr. Indus. & Laborers Joint Pension Tr. v. Carbonite, Inc.*, 22 F.4th 1, 7 (1st Cir. 2021) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund,* 575 U.S. 175, 188–89 (2015)). Plaintiff fails to plead any facts showing that Mr. Foster did *not* believe in October 2020 that Charles River was "doing very well resourcing in [N]HPs," Compl. ¶¶ 12–13, 176, or did *not* believe in September 2021 that "our procurement group is handling potentially shortages quite well," *id.* ¶ 236. Nor does Plaintiff plead facts showing that Mr. Foster was aware of contemporaneous facts that did not fairly align with these beliefs, or that he had failed to make reasonable inquiries.

Some of the challenged disclosures are expressions of corporate optimism, which are similarly not actionable. Courts deem "immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of

information available." *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996). Most of the challenged statements regarding Charles River's supply chain management—such as "we've done an exceptional job in adding, ensuring, tightening up, expanding our supply sources," Compl. ¶ 221—fall into this category of non-actionable puffery. *See supra* at 7–8. In *In re Biogen Inc. Securities Litigation*, the Court held that statements that "products continue to do well" including one "terrific product that is going to perform very well in the market" were inactionable. 193 F. Supp. 3d 5, 42 (D. Mass. 2016), *aff'd*, 857 F.3d 34 (1st Cir. 2017).

To the extent that Charles River's disclosures are forward-looking, they are protected by the PSLRA's safe harbor. *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 34 (1st Cir. 2020) ("[A] statement is not actionable if it is 'a forward-looking statement, and it is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement.'") (quoting 15 U.S.C. § 78u-5(c)(1)(A)(i)). The safe harbor protects, for example, Charles River's statement that "we have and expect to continue to increase inventory and supplies." Compl. ¶¶ 143, 157, 168, 184, 260. Charles River accompanied this statement with extensive warnings regarding the risks of a supply disruption, as quoted above. *See supra* at 6–7.

Plaintiff contends these risk warnings misleadingly omitted to disclose that Charles River allegedly used "non-preferred" suppliers of Cambodian macaques. Compl. ¶ 146. As discussed, Plaintiff does not allege facts showing that Charles River used any vendor that it considered a "non-preferred vendo[r]" during the alleged class period. *See supra* at 13. In any event, a forward-looking *warning* can be actionable only "if it warns only against future risks and implies that such risks are not immediately foreseeable and considerably certain," despite the fact that they are. *Pyramid Holdings, Inc. v. Inverness Medical Innovations Inc.*, 638 F. Supp. 2d 120, 125 (D. Mass.

14

2009).  Plaintiff pleads no facts showing that supply disruption was "immediately foreseeable and considerably certain" in May 2020 or any subsequent relevant point in time.

Finally, Plaintiff fails to plead any materially misleading omission.  "[I]n order to get past 'go' on a motion to dismiss, a plaintiff must first identify a statement made by defendants, show how the omission rendered that statement misleading, and finally establish that there was a duty to disclose the omitted information." *Santander*, 35 F.4th at 34.  Plaintiff's omission theory fails because Charles River had no duty to disclose any additional risks about possible purchases from "non-preferred" suppliers.  Compl. ¶ 237.  Charles River expressly warned investors about the risk of disruption to its supply of macaques and about the possibility that its operations may not comply with laws, including laws governing the importation of macaques.  *See supra* at 5–7.  "[I]n the context of a section 10(b) claim, a speaker warning of a hypothetical risk only acquires a duty to disclose further known information about the extent of that risk when the alleged risk had a near certainty of causing financial disaster to the company or where the warned-of risk had already begun to materialize." *CVS Health*, 46 F.4th at 35; *cf. Tutor Perini Corp. v. Banc of Am. Sec. LLC*, 842 F.3d 71, 91, 94 (1st Cir. 2016).

The Amended Complaint fails to plead facts showing that Charles River knew that its practices "had a near certainty of causing financial disaster to the company." Compl. ¶ 4.  Nor does the Amended Complaint plead facts showing that any alleged hypothetical risk of its purchasing practices "had already begun to materialize" at the time of the alleged omissions.  Indeed, Plaintiff pleads no facts showing that these risks *ever* came to fruition.  Plaintiff does not allege that any "non-preferred" supplier ever shipped wild-caught macaques to Charles River.  The shipments that FWS refused to clear were from Charles River's biggest Cambodian supplier— K.F. (Cambodia) Ltd. ("KF Cambodia")—a *preferred* supplier.  Compl. ¶¶ 289–296.

15

### B.   Charles River's Statements Regarding Compliance with Law, Including Its Codes of Conduct, Are Not Actionable

The Amended Complaint asserts that Charles River misled investors by stating that it "believe[d]" that it was "currently in compliance in all material respects with applicable … laws." *See*, *e.g.*, Compl. ¶ 149.  The Amended Complaint argues that this and similar statements were false and misleading because Charles River "failed to disclose that the Company had already engaged in conduct that substantially and materially increased the risk to the Company"—namely, "purchasing long-tailed macaques from non-preferred suppliers." *Id*. ¶ 150.

It is well-established, however, that an issuer's statement that it believes it is in compliance with law is not actionable.  "Absent a clear allegation that the defendants *knew* of [illegal conduct] *and its illegal nature* at the time they stated the belief that the company was in compliance with the law, there is nothing further to disclose.  The fact that a defendant's belief or opinion later 'prove[s] to be wrong in hindsight does not render the statements untrue when made.'" *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir. 1996)); *see also*, *e.g.*, *Indiana State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 945 (6th Cir. 2009) (rejecting arguments that, based an issuer's "general statements that it complied with state law … and had a policy of complying with the law," the issuer "had a duty to disclose its involvement in 'illegal' activities").  The Amended Complaint alleges no facts suggesting that Charles River knew of any activity of an illegal nature.

Further, Plaintiff has not pleaded facts plausibly showing that Charles River did *not* comply with applicable law.  In an improper attempt to cast aspersions on Charles River, the Amended Complaint relies on admitted and alleged illegality *unrelated* to Charles River or the macaques it purchased.  The Amended Complaint cites an August 2021 guilty plea by an OBRC executive for

16

falsely denying to FWS agents that OBRC employees had made reports "concerning visits to supplier sites in Cambodia." Ex. 1; *see* Compl. ¶¶ 21, 23, 232–233.[5] OBRC has sold macaques to Charles River, but its executive's guilty plea had nothing to do with Charles River. Indeed, he was not charged with, and did not plead guilty to, illegal importation at all, let alone the sale of any wild-caught macaques to Charles River.

The Amended Complaint also cites the Vanny indictment. *See supra* at 8. But there are no allegations connecting the indicted individuals or their alleged misconduct to Charles River or its principal supplier, KF Cambodia (from which Charles River purchased "over 10,000" Cambodian macaques during the alleged class period, Compl. ¶ 132). Plaintiff alleges that Charles River purchased (1) "at least 1,918" macaques from OBRC and Envigo, which were acquired by an alleged unindicted co-conspirator of Vanny (Inotiv), *id.* ¶ 254; and (2) "at least 956" macaques from another alleged unindicted co-conspirator (Worldwide), which allegedly purchased macaques from a supplier whose executives were indicted (Vanny Cambodia), *id.* ¶¶ 39, 133. These allegations in no way suggest illegal conduct by Charles River.

The Amended Complaint cites the government investigation into shipments of macaques from KF Cambodia to Charles River, and the FWS's refusal to clear some of those shipments that arrived in late 2022 and early 2023. But the mere existence of an investigation is not probative of illegality. *See*, *e.g.*, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) ("[T]he government investigations are just that, investigations."). Nor is FWS's refusal to clear shipments probative of any illegal conduct *by Charles River*. Tellingly, Plaintiff does not assert

---

[5] In cases governed by the PSLRA, the Court may properly consider on a motion to dismiss documents incorporated into the complaint by reference and matters of which the Court may take judicial notice, including public records such as filings made with the SEC. *See Tellabs*, 551 U.S. at 322; *Biogen*, 193 F. Supp. 3d at 13 n.2.

that Charles River has violated the law—merely that Charles River "engaged in conduct that substantially and materially increased the risk to the Company." Compl. ¶ 150.

Plaintiff also contends that statements in the Company's Codes of Conduct, including as to compliance with law by Charles River and its suppliers, were false and misleading. *Id*. ¶¶ 194–195, 200. But these Codes of Conduct are, as a matter of law, not actionable. Codes of conduct are "inherently aspirational" and not objectively verifiable. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017). Again, a stated commitment to comply with the law is not an actionable representation that no illegality has occurred. *See Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (codes of conduct contain "general statements about . . . integrity, and compliance with ethical norms" that are "inactionable puffery"); *Ferris v. Wynn Resorts, Ltd.*, 462 F. Supp. 3d 1101, 1121–22 (D. Nev. 2020) (statements that violations "will be … investigated" and harassment "will not be tolerated" were inactionable).

## III.   PLAINTIFF FAILS TO PLEAD AN INTENT TO DEFRAUD INVESTORS

Complaints that satisfy the heightened pleading standard for scienter "often" include "clear allegations of admissions, internal records or witnessed discussions" showing that defendants were "aware that they were withholding vital information or at least were warned by others that this was so" when they made the misleading statements. *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012). Here, Plaintiff relies on *none* of those, and the Amended Complaint pleads no facts giving rise to the requisite "strong inference" of scienter.

### A.   Plaintiff Fails to Establish Scienter Through Stock Sales and Gifts

Plaintiff's central theory of scienter is that Mr. Foster and Mr. Smith made material misstatements and omissions "in order to inflate the price of Charles River common stock and sell their personal shares at artificially prices." Compl. ¶ 388. But "mere pleading of insider trading, without regard to either context or the strength of the inferences to be drawn, is not enough. At a

minimum, the trading must be in a context where defendants have incentives to withhold material, non-public information, and it must be unusual, well beyond the normal patterns of trading by those defendants." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 198 (1st Cir. 1999); *see also*, *e.g.*, *Fire & Police Pension Ass'n of Colorado v. Abiomed, Inc.*, 778 F.3d 228, 245–46 (1st Cir. 2015) (holding that insider trading that was "neither unusual nor suspicious" did not support scienter).

Plaintiff fails to plead facts showing that the sales and gifts of stock by Mr. Foster and Mr. Smith were unusual or suspicious. At the most basic level, Plaintiff fails to explain how the alleged sales and gifts give rise to the necessary strong inference that defendants were intentionally defrauding investors. *See Abiomed*, 778 F.3d at 246. Among the missing context, Plaintiff fails to show how Mr. Foster's and Mr. Smith's stock sales during the class period compared to their stock sales outside of the class period. Stock sales during the class period "cannot add much to the inference of scienter without something (e.g., points of comparison from outside the class period) to show that these sales were unusual." *Auto. Indus. Pension Tr. Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012).

The allegations of gifts of stock are especially nonprobative of fraud. Plaintiff alleges no circumstances surrounding the gifts that would give rise to a strong inference of the giver's intent to defraud investors. And Plaintiff fails to negate competing non-fraudulent inferences, such as that a gift to a spouse that is not a sale does not take advantage of any inflation of the stock price.

### B.    Plaintiff Otherwise Fails to Plead a "Strong Inference" of Scienter

Plaintiff fails to allege facts showing that Charles River engaged in illegality. *See supra* at 17–18. Similarly, Plaintiff fails to allege facts showing that, at the time Mr. Foster and Mr. Smith made their challenged statements, they were "aware of facts that should have made them aware of the falseness of [those] statements." *Sousa v. Sonus Networks, Inc.*, 261 F. Supp. 3d 120, 120 (D.

19

Mass. 2017).  That failure also defeats the necessary strong inference of scienter.

Plaintiffs' contention that Charles River intentionally concealed from investors that it had purchased macaques from non-preferred vendors is further undermined by Mr. Foster's candid admission at a conference for analysts and investors that at some times in the past, Charles River had purchased some animals from "brokers" who were not preferred vendors.  Compl. ¶ 50.

To manufacture a supposed "red flag," Plaintiff contends that because it takes more than two-and-a-half years to breed macaques for export, it was "very unlikely" that Cambodia's increased exports were all purpose-bred.  *Id*. ¶¶ 117–123.  But the Amended Complaint says nothing about the number of captive breeders in Cambodia in 2018 (or subsequently) that would support Plaintiff's speculation.  More relevant, Plaintiff alleges no facts specific to the captive breeding stock of KF Cambodia, which supplied the majority of Cambodian macaques to Charles River during the alleged class period, or any of Charles River's other suppliers of Cambodian macaques. Given Plaintiff's omissions, there can be no inference—let alone a strong inference—to conclude that defendants ignored a supposed "red flag" about the legality of its imports.

Nor can Plaintiff support scienter by pointing to Mr. Foster's and Mr. Smith's corporate positions.  "[C]orporate leadership positions alone are not enough to create a strong inference of scienter." *Toussaint v. Care.com Inc.*, 490 F. Supp. 3d 341, 352 (D. Mass. 2020) (Casper, J.); *see also City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems*, 2023 WL 4706741, at *8 (D. Mass. July 24, 2023) ("the 'scienter by status' theory … has been uniformly rejected").

Finally, Charles River repeatedly disclosed—starting before the alleged class period—that disruption of its NHP supply chain was one of the principal risks facing its business, with a potentially severe impact in the event it materialized.  These consistent disclosures support a "particularly strong" non-culpable inference.  *bluebird bio*, 599 F. Supp. 3d at 67; *see also Care.com*, 490

20

F. Supp. 3d at 352 (inferring "inherent, but disclosed, risks … in [the issuer's] business model").

## IV.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

A plaintiff can establish loss causation, an essential element of a securities fraud claim, by: "(1) identifying a corrective disclosure' (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a 'substantial' amount of the price drop." *Shash v. Biogen, Inc.*, 84 F.4th 1, 20 (1st Cir. 2023). Because none of the alleged corrective disclosures "revealed" that any prior disclosure by Charles River was false or misleading, none plausibly establishes loss causation. Compl. ¶ 383.

The first alleged corrective disclosure is the November 16, 2022 unsealing of the Vanny indictment. The indictment is not probative of any illegal conduct by Charles River or KF Cambodia. *See supra* at 18–19. Thus, the indictment in no way revealed that any prior statement by Charles River—including its belief it complied with the law—was false or misleading.

Where, as here, "a plaintiff alleges corrective disclosures that are not straightforward admissions of a defendant's previous misrepresentations, it is appropriate to look for indications of the market's contemporaneous response to those statements." *Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 243 (1st Cir. 2013). In research reports incorporated into the Amended Complaint, analysts attributed Charles River's stock price drop to concerns about to a "broader slowdown in NHP imports from Cambodia."[6] Plaintiff's claim that the market viewed Charles

---

[6] Ex. 2 (Nov. 30, 2022 UBS Report (Compl. ¶ 329)) at 1 ("As for Charles River, we note that the company was not named or referenced in the proceedings and did not have any direct supply contracts with the supplier. However, we believe the news has now triggered a broader slowdown in NHP imports from Cambodia and could lead to (….continued)

River's prior statements to have been false "is not plausible in light of the allegations of the Amended Complaint and statements in the operative documents it cites." *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 275 (D. Mass. 2013).

The second alleged corrective disclosure is Charles River's November 30, 2022 statement that it "does not have any direct supply contracts with the indicted Cambodian supplier." Compl. ¶ 326. This disclosure, too, "did not correct some untruth" so the stock drop at that time cannot be attributed to revelation of a fraud. *bluebird bio*, 599 F. Supp. 3d at 70. Instead, as Plaintiff concedes, analysts attributed the stock drop to Charles River's simultaneous disclosure that it "is operating under the expectation that for some time period supply of Cambodia-sourced NHPs will be difficult to obtain in the United States." Compl. ¶ 326; *see also id.* ¶¶ 329–330.

The third alleged corrective disclosure is the Jefferies analyst report concluding that Charles River had likely obtained some NHPs indirectly from Vanny. *Id*. ¶¶ 43, 338. Even as-suming that an analyst report can constitute a corrective disclosure, *see CVS Caremark Corp.*, 716 F.3d at 243 n.9, the Jeffries report did not reveal that any of Charles River's prior statements was false or misleading. To the contrary, the report that Vanny was an indirect supplier was entirely consistent with Charles River's prior disclosure that "[did] not have any direct supply contracts with the indicted Cambodian supplier," *id*. ¶ 326—and thus it was not "corrective."

The fourth alleged corrective disclosure is Charles River's February 22, 2023 disclosure of the government investigation into certain shipments of Cambodian macaques; and that Charles River had voluntarily suspended imports from Cambodia. *Id*. ¶¶ 47, 345. Three federal courts of appeals, in other circuits, have held that loss causation cannot rest solely on the announcement of

---

regulatory and/or geopolitical changes given Cambodian officials were criminally charged."); *see also id.* Ex. 3 (Nov. 30, 2022 Stephens Report (Compl. ¶ 330)) at 2 ("The math investors appear to be running through is: assuming ~20% of [Charles River's] revenue is tied to NHPs and that 50% of this could go away if Cambodian supply goes offline, then ~10% of EPS would be at risk and hence we have a stock down 5%-10% today.").

a government investigation. *See*, *e.g.*, *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) ("[T]he announcement of an investigation, without more, is insufficient to establish loss causation."); *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 323 (5th Cir. 2014) ("[G]enerally, commencement of government investigations on suspected fraud do not, standing alone, amount to a corrective disclosure."); *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) ("[T]he commencement of an SEC investigation, without more, is insufficient to constitute a corrective disclosure for purposes of § 10(b)."). That reasoning should govern here. The disclosure of a subpoena cannot be equated with a signal that any of Charles River's prior statements were false. Similarly, FWS's refusal to clear certain shipments from KF Cambodia adds nothing to Charles River's statements about the risks of non-preferred suppliers because Plaintiff does not—and cannot—allege that KF Cambodia is a "non-preferred" supplier.

The final alleged corrective disclosure is Mr. Foster's March 15, 2023 statement that Charles River "to some extent historically" used "brokers that get animals from wherever," which "[w]e prefer not to use." *See supra* at 9 (quoting Compl. ¶ 348). As explained above, Mr. Foster did not say that Charles River had used such "non-preferred" brokers during the alleged class period. *See supra* at 13. Further, his statement cannot reasonably be construed to indicate that Charles River's current vendors failed to follow legal requirements. "Although the corrective disclosure 'need not be a mirror-image' or 'direct admission that a previous statement is untrue,' it 'must relate to the same subject matter as the alleged misrepresentation.'" *In re Bos. Sci. Corp. Sec. Litig.*, 646 F. Supp. 3d 249, 292 (D. Mass. 2022) (quoting *CVS Caremark Corp.*, 716 F.3d at 240). Here, Plaintiff has failed to show how Mr. Foster's statement about brokers shows that any of Charles River's prior statements was false.

## V.     PLAINTIFF'S SECTION 20(A) CLAIMS SHOULD BE DISMISSED

Section 20(a) imposes liability on "[e]very person who, directly or indirectly, controls any

person liable" for a securities fraud violation. 15 U.S.C. § 78t(a).  In order to state a claim under Section 20(a), Plaintiff must allege a primary violation of the Exchange Act.  *CVS Health*, 46 F.4th at 30.  Here, Plaintiff's failure to plead a Section 10(b) claim dooms its Section 20(a) claim.

Plaintiff's Section 20(a) claim fails for the independent reason that it alleges no facts showing that Mr. Foster or Mr. Smith was a culpable participant in the alleged fraud.  *See Akamai Techs., Inc. v. Deutsche Bank AG*, 764 F. Supp. 2d 263, 266 (D. Mass. 2011); *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 247 (D. Mass. 2011).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice.

24

Dated: January 15, 2024

By:    /s/ *Mara Theophila*

Mara Theophila (BBO #704763)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
(617) 535-4000
mtheophila@mwe.com

Charles S. Duggan (admitted *pro hac vice*)
David B. Toscano (admitted *pro hac vice*)
Luca Marzorati (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
charles.duggan@davispolk.com
david.toscano@davispolk.com
luca.marzorati@davispolk.com

*Attorneys for Defendants Charles River
Laboratories International, Inc., James
C. Foster, and David R. Smith*

25