**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE TEACHERS RETIREMENT SYSTEM OF OHIO, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>CHARLES RIVER LABORATORIES INTERNATIONAL, INC., JAMES C. FOSTER, and DAVID R. SMITH,<br><br>      Defendants. | Honorable Denise J. Casper<br>Case No. 1:23-cv-11132-DJC<br><br>Leave to file granted on<br>September 26, 2023 and April 18, 2024 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

Mara Theophila (BBO #704763)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
(617) 535-4000
mtheophila@mwe.com

Charles S. Duggan (admitted *pro hac vice*)
David B. Toscano (admitted *pro hac vice*)
Luca Marzorati (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
charles.duggan@davispolk.com
david.toscano@davispolk.com
luca.marzorati@davispolk.com

*Attorneys for Defendants Charles River*
*Laboratories International, Inc., James C.*
*Foster, and David R. Smith*

# **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .............................................................................................................................. 3

   I.  PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION ............ 3

      A.  Statements Regarding "Non-Preferred Vendors" and Brokers "We Prefer Not to Use" ...................................................................................................... 3

      B.  Statements Regarding Relationship with Indicted Supplier ......................................... 6

      C.  Statements Regarding Compliance with Law................................................. 8

      D.  Other Statements Regarding Macaque Supplies............................................. 9

   II.  PLAINTIFF FAILS TO PLEAD AN INTENT TO DEFRAUD........................................ 9

      A.  Plaintiff Fails to Plead Scienter Through Stock Sales and Gifts ............................... 10

      B.  Plaintiff's Other Allegations Likewise Fail to Plead Scienter .................................. 11

   III. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION .................................................... 13

CONCLUSION.......................................................................................................................... 16

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Auto. Indus. Pension Tr. Fund v. Textron Inc.*,
682 F.3d 34 (1st Cir. 2012) ....................................................................................... 11

*In re Biogen Inc. Sec. Litig.*,
857 F.3d 34 (1st Cir. 2017) ....................................................................................... 12

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*,
752 F.3d 82 (1st Cir. 2014) ....................................................................................... 14

*Brumbaugh v. Wave Sys. Corp.*,
416 F. Supp. 2d 239 (D. Mass. 2006) .............................................................. 7, 10, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
632 F.3d 751 (1st Cir. 2011) ..................................................................................... 10

*City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*,
2023 WL 4706741 (D. Mass. July 24, 2023) ............................................................... 9

*Coyne v. Metabolix, Inc.*,
943 F. Supp. 2d 259 (D. Mass. 2013) .................................................................. 13, 15

*In re DraftKings Inc. Sec. Litig.*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023) .......................................................................... 8

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
778 F.3d 228 (1st Cir. 2015) ..................................................................................... 10

*In re Inotiv Sec. Litig.*,
2024 WL 1344784 (N.D. Ind. Mar. 29, 2024) .............................................................. 4

*Karth v. Keryx Biopharmaceuticals, Inc.*,
2018 WL 3518497 (D. Mass. July 19, 2018) ................................................................ 5

*Kiken v. Lumber Liquidators Holdings, Inc.*,
155 F. Supp. 3d 593 (E.D. Va. 2015) ........................................................................... 9

*Lenartz v. Am. Superconductor Corp.*,
879 F. Supp. 2d 167 (D. Mass. 2012) ........................................................................ 10

*Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*,
140 F. Supp. 3d 120 (D. Mass. 2015),
*aff'd*, 838 F.3d 76 (1st Cir. 2016) ............................................................................. 11

*Luongo v. Desktop Metal, Inc.*,
   2023 WL 6142715 (D. Mass. Sept. 20, 2023) ............................................................. 7

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   2024 WL 1588706 (U.S. Apr. 12, 2024) ............................................................. 2, 5, 14

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
   716 F.3d 229 (1st Cir. 2013) ............................................................. 13, 14

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008) ............................................................. 10

*In re Montreal, Maine & Atl. Ry., Ltd.*,
   888 F.3d 1 (1st Cir. 2018) ............................................................. 5

*Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*,
   665 F. Supp. 3d 125 (D. Mass. 2023) ............................................................. 6

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ............................................................. 6

*Ontario Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
   432 F. Supp. 3d 131 (D. Conn. 2019) ............................................................. 4

*Pelletier v. Endo Int'l PLC*,
   338 F.R.D. 446 (E.D. Pa. 2021) ............................................................. 4

*Pizzuto v. Homology Medicines, Inc.*,
   2024 WL 1436025 (D. Mass. Mar. 31, 2024) ............................................................. 13

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
   769 F.3d 313 (5th Cir. 2014) ............................................................. 15

*Quinones v. Frequency Therapeutics, Inc.*,
   665 F. Supp. 3d 156 (D. Mass. 2023) ............................................................. 11

*Urman v. Novelos Therapeutics, Inc.*,
   867 F. Supp. 2d 190 (D. Mass. 2012) ............................................................. 15

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) ............................................................. 12

*In re Wayfair, Inc. Sec. Litig.*,
   471 F. Supp. 3d 332 (D. Mass. 2020) ............................................................. 11

## PRELIMINARY STATEMENT[1]

Like countless other companies, Charles River was forced to overhaul its supply chain during the COVID-19 pandemic.  No longer able to source macaques from China, Charles River turned to suppliers in other countries, including Cambodia.  And it repeatedly warned investors about the risks to its supply chain, including risks due to laws governing imports from foreign countries.  As Charles River has shown in its motion to dismiss, these disclosures advised investors of the risks associated with its supply of macaques, and Plaintiff's opposition fails to state a claim that Charles River defrauded its investors.

In November 2022, DOJ indicted Cambodian officials and executives of Vanny Cambodia, a macaque supplier, following a federal investigation into "international trafficking of primates into the United States."  The indictment contained no reference to Charles River.  Nevertheless, the Company notified investors of the indictment, advised that it had no direct supply contracts with Vanny Cambodia, and warned that "for some time period supply of Cambodian-sourced NHPs will be difficult to obtain in the United States." [2]

In its next regular disclosure, in February 2023, Charles River advised investors that federal authorities were investigating shipments of macaques it had received from its principal Cambodian supplier, KF Cambodia, which the FWS refused to "clear" for import, and that the Company had voluntarily suspended imports of Cambodian macaques into the United States.  Plaintiff concedes that it has not alleged facts showing that Charles River failed to comply with the law or knew of any illegal conduct.

---

[1] This reply uses the defined terms introduced in Defendants' moving brief ("Mem."), Dkt. No. 43.  Plaintiff's opposition brief, Dkt. No. 45, is cited as "Opp."  Unless otherwise indicated, emphasis has been added to quotations, and internal quotations, brackets, ellipses, citations, and footnotes have been omitted.

[2] The only defendant tried pursuant to the indictment was acquitted.  *See* Judgment of Acquittal as to Masphal Kry, *United States v. Keo*, No. 22-cr-20340 (S.D. Fla. Apr. 5, 2024) (ECF No. 347).

Plaintiff seizes upon these industrywide supply disruptions to accuse Charles River of a years-long securities fraud.  But the Complaint fails to show (1) that Defendants made any materially false or misleading statement, (2) that any Defendant acted with an intent to defraud investors, or (3) that alleged declines in Charles River's stock price were caused by the revelation of any prior deception of investors, as opposed to new developments affecting its supply of macaques and business operations.  Bad news does not mean fraud.

*First*, Plaintiff claims that Charles River misled investors by not disclosing that it purchased macaques from supposedly "non-preferred" Cambodian suppliers, which Plaintiff asserts were "very likely" to sell wild-caught Cambodian macaques.  But there are no facts alleged to show that Charles River believed that it was at special risk of receiving (or had ever received) wild-caught macaques from any supposedly "non-preferred" vendor.  Plaintiff fails to show how this supposed omission about purchases from "non-preferred" suppliers "renders affirmative statements made misleading."  *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 2024 WL 1588706, at *5 (U.S. Apr. 12, 2024); *see* Mem. 15.  The Complaint alleges no special legal risk known to Charles River in respect of these supposedly "non-preferred" suppliers.

To the contrary, the only shipments to Charles River that allegedly were *not* cleared by the U.S. government and are allegedly subject to investigation were from Charles River's *preferred vendor*, KF Cambodia.  Indeed, Plaintiff alleges that Charles River continued to receive Cambodian macaques from so-called "non-preferred" suppliers Worldwide, Envigo, and OBRC after the U.S. government started to block shipments from Charles River's *preferred vendor*, KF Cambodia, in September 2022.  Compl. at 9 (chart) (alleging October 2022 shipments from Worldwide and Envigo, and a November 2022 shipment from OBRC).

*Second*, there is no basis for any "strong inference" that Charles River sought to defraud

investors.  Plaintiff points to sales of Charles River stock by CEO James Foster and then-CFO David R. Smith.  But Plaintiff pleads no facts to suggest that these sales were unusual, much less suspicious.  Indeed, Mr. Foster and Mr. Smith increased their Charles River stockholdings during the class period, which hardly supports an inference that they sought to defraud investors by insider selling while having negative non-public information.

*Third*, Plaintiff alleges no corrective disclosure of the purported fraud alleged in the Complaint.  Plaintiff calls out five days in late 2022 and early 2023 when Charles River's stock price declined, but there was no correction or disclosure as to the supposedly undisclosed risks of Charles River's purported dealings with purportedly *non-preferred* suppliers.  Indeed, Charles River ultimately voluntarily suspended its imports from all Cambodian suppliers.  Plaintiff cannot connect its supposed loss with its theory of fraud.  It is, rather, apparent that the market reacted to industrywide events about which Charles River had warned, not to any revelation that the Company had misled investors.

**ARGUMENT**

**I.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISREPRESENTATION**

**A.    Statements Regarding "Non-Preferred Vendors" and Brokers "We Prefer Not to Use"**

As Defendants have shown, the Complaint fails to allege that Charles River misled its investors about its purported purchases of macaques from "non-preferred vendors."  Mem. 12–13.  To begin, although the Complaint calls certain Charles River suppliers—namely, OBRC and Envigo—"non-preferred" vendors, *see* Compl. ¶¶ 146, 201, 237, the Complaint nowhere explains the basis for that statement or provides any reason to think that Charles River considered them to be "non-preferred."

Plaintiff does not allege facts connecting these suppliers to Charles River's disclosures

3

regarding "non-preferred vendors" or to Mr. Foster's separate statement that "[w]e prefer not to use" certain brokers. Much less does it show that Charles River believed that these suppliers carried any higher legal risk. Charles River's disclosures described "non-preferred vendors" in terms of their inability to "ensur[e] a steady and timely supply" and "significantly higher prices." Compl. ¶ 145. And Mr. Foster described "certain brokers" that Charles River "prefer[s] not to use" as not "car[ing] where the animals come from or what the background is." *Id*. ¶ 348. But the Complaint supplies no reason to think that he or Charles River were concerned that any of these suppliers "very likely" provided Charles River with Cambodian macaques "trapped from the wild." *Id*. ¶ 13.

Indeed, the recent acquittal of the only defendant tried pursuant to the November 2022 indictment highlights that investigations and indictments are not probative of wrongdoing. *See supra* n.2; *see also*, *e.g.*, *In re Inotiv Sec. Litig*., 2024 WL 1344784, at *29 (N.D. Ind. Mar. 29, 2024) ("The fact that Envigo and OBRC received subpoenas is just that—they received subpoenas."). Plaintiff's allegations establish that the government investigations were *not* specific to supposed "non-preferred" suppliers. Compl. ¶ 21 (quoting August 4, 2021 DOJ press release disclosing investigation into "international trafficking of primates into the United States"); *id.* ¶ 30 (alleging that by September 2022, the investigation "had turned its focus" on Charles River and *KF Cambodia*—which Plaintiff does *not* label a "non-preferred" supplier).[3]

Indeed, according to the Complaint, the shipment allegedly "blocked" by the FWS in September 2022 was from *KF Cambodia* (Compl. ¶ 48), and the FWS subsequently cleared shipments from "non-preferred" Cambodia suppliers (*id.* at 9 (chart) (alleging October 2022 shipments from Worldwide and Envigo, and November 2022 shipment from OBRC)). These circumstances belie

---

[3] Courts consistently have held that a company has no standalone duty to disclose the fact that it received a subpoena. *See*, *e.g.*, *Pelletier v. Endo Int'l PLC*, 338 F.R.D. 446, 465–66 (E.D. Pa. 2021); *Ontario Tchrs.' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 168 (D. Conn. 2019). *A fortiori* Charles River had no duty to disclose that *others in the industry* received subpoenas or faced government investigations.

4

Plaintiff's theory that Charles River's warnings about supply chain risks were misleading because it did not identify that a purportedly "higher" risk attached to shipments from "non-preferred" vendors. *Macquarie*, 2024 WL 1588706, at *5; Mem. 15.[4]

Nor does Plaintiff's pleading failure "raise fact disputes that cannot be resolved on a motion to dismiss." Opp. 13. The *facts alleged* demonstrate that Plaintiff's "non-preferred" supplier label does not meaningfully correspond to the risks facing Charles River. Thus, Plaintiff's "non-preferred" supplier theory of fraud rests on an empty label that should be disregarded on a motion to dismiss. *See, e.g., In re Montreal, Maine & Atl. Ry., Ltd.*, 888 F.3d 1, 12 (1st Cir. 2018).

Charles River disclosed supply chain risks throughout the class period. Mem. 5–7. Far from "reassur[ing] investors about supply" (Opp. 16), Charles River warned of potential "[d]isruptions to their continued supply from time to time," including because of "export or import laws/restrictions" and "other ordinary course or unanticipated events." Compl. ¶ 145. Charles River had no duty to disclose more, let alone to specify purported differences in degrees of legal risk associated with "preferred" or "non-preferred" vendors, which the Complaint does not demonstrate that Charles River had a duty to specify. Mem. 15; *Macquarie*, 2024 WL 1588706, at *5.

Finally, many of the challenged statements regarding Charles River's supply chain are, for independent reasons, not legally actionable. As Defendants have shown, statements such as, "I think we're doing very well resourcing in NHPs," are opinions of general corporate optimism and not actionable as a matter of law. Mem. 13–14. Plaintiff focuses on Mr. Foster's statement during an investor call on June 2, 2021: "I think we're managing [supply chain stresses] well and not having any sort of external or artificial roadblocks." Opp. 17–18 (quoting Compl. ¶ 221). Not

---

[4] In *Karth v. Keryx Biopharmaceuticals, Inc.*, this Court found that the company's decision to scale back its risk warnings while maintaining the same risky supply practices misled investors. 2018 WL 3518497, at *4 (D. Mass. July 19, 2018). There is no allegation Charles River dropped any warning during the alleged class period.

only was this statement facially an opinion ("I think") that entailed generalized optimism ("well"), but Plaintiff pleads no facts showing "external or artificial roadblocks" in June 2021 that would suggest that this statement was not entirely accurate when made.

### B.     Statements Regarding Relationship with Indicted Supplier

Plaintiff quibbles with certain disclosures about Vanny Cambodia while disregarding their full context:  Charles River repeatedly warned investors that, in view of the indictment of Vanny Cambodia, "for some time period supply of Cambodia-sourced NHPs will be difficult to obtain in the United States."  Compl. ¶ 326; *see id.* ¶ 327.

Plaintiff points to Charles River's statements on November 30, 2022 that it had no "direct supply contracts" and, allegedly, no "direct contacts" with Vanny Cambodia, "who's not a supplier of ours."  Mem. 13.[5]  Plaintiff asserts that Vanny Cambodia *indirectly* supplied Charles River, which purportedly sourced macaques from Vanny Cambodia's *affiliates* in other countries. Opp. 11.  But these arguments merely confirm the accuracy of what Charles River and Mr. Foster said:  the Company had no "*direct*" relationship with Vanny Cambodia, which no reasonable investor would interpret to mean that it had no relationship *at all*.  "Statements of corporate executives are to be read in light of what a reasonable investor would have understood them to mean, not what a wishful, ill-informed investor would have hoped them to mean."  *Okla. Firefighters Pension & Ret. Sys. v. Biogen Inc.*, 665 F. Supp. 3d 125, 143 (D. Mass. 2023); *see Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015) ("[W]hether a statement is 'misleading' depends on the perspective of a reasonable investor.").  Courts routinely reject theories of falsity that assume investors ignore carefully worded statements.  *See*, *e.g.*, *Biogen*, 665 F. Supp. 3d at 140–43 (rejecting plaintiff's "unjustifiably broad interpretation" of what it

---

[5] Plaintiff's fixation on these (truthful) statements from November 2022 appears to be an attempt to distract from the Complaint's failure to support any fraud that supposedly started more than 2½ years earlier.

meant for site to be "ready"); *Luongo v. Desktop Metal, Inc.*, 2023 WL 6142715, at *11 (D. Mass. Sept. 20, 2023) (rejecting theory that "FDA-cleared" meant perfect compliance with FDA rules).[6]

Plaintiff argues that Mr. Foster's observation that Vanny Cambodia was "unable to ship" misleadingly implied that Charles River remained able to source NHPs from Cambodia.  Opp. 12. But that interpretation is untenable in the context of Charles River's disclosures, echoed by Mr. Foster, about the expected difficulty of obtaining macaques from Cambodia.  Compl. ¶¶ 326–327.[7]

Plaintiff argues that analysts were misled (Opp. 12 (citing Compl. ¶¶ 42, 334)), but pleads facts confirming that the cited statement that Charles River had "alternative sources" to Vanny Cambodia was correct:  Charles River's supplier KF Cambodia had no ties to the indicted supplier. Compl. ¶ 45; *id.* at 8 (diagram).  Further, another analyst allegedly tied the decline in Charles River's stock price to an assumption that the Company's "Cambodian [macaque] supply goes of-fline" (Mem. 21–22 n.6), a concern prompted by Charles River's accurate warnings about the expected difficulty of obtaining Cambodian macaques.  Compl. ¶ 37.

Charles River was not required to heighten its warnings about sourcing Cambodian ma-caques because the government blocked a September 2022 shipment from KF Cambodia (which Plaintiff does *not* label "non-preferred").  No shipment from KF Cambodia had ever been blocked before September 21, 2022.  *Id*. ¶ 291.  As of November 30, 2022, it was a one-off event, and Plaintiff provides no basis to assume that it signaled that Charles River's imports from Cambodia would be blocked.  Indeed, as noted above, the Complaint itself alleges that Charles River

---

[6] By contrast, the court in *Brumbaugh v. Wave System Corp.*, 416 F. Supp. 2d 239, 247–50 (D. Mass. 2006), relied on the plausible inference that the company's contract with a major customer—announced shortly after predicting unprecedented sales from impending deals—would benefit the company economically.

[7] Plaintiff wrongly insists that Defendants have conceded the adequacy of alleged misrepresentations not specifically spelled out in Defendants' moving brief (Opp. 12, 15), but those allegations are plainly contained within categories that Defendants argued were generally unavailing.  Plaintiff cites no authority requiring Defendants to specifically address every overlapping alleged misstatement contained within 66 pages of the Complaint.  Plaintiff fails to show any alleged falsehood not addressed by Defendants' opening brief.

*subsequently* received shipments of Cambodian macaques. *See supra* at 2. Plaintiff alleges that Charles River continued to order macaques from KF Cambodia through January 2023 (Compl. ¶¶ 294–295), evidently because it expected that it would be able to receive shipments from Cambodia during that period. According to the Complaint, only later did Charles River conclude that it would have to voluntarily suspend shipments from Cambodia due to general import concerns.

### C.      Statements Regarding Compliance with Law

Plaintiff dismisses as "a straw man" (and thus concedes) its failure to allege "facts plausibly showing that Charles River did not comply with applicable law or knew of any activity of an illegal nature." Opp. 2; *see id.* 18. The mere existence of investigations and an indictment of other parties is not a basis for claiming that Charles River's statement regarding its own compliance with the law were false. *See supra* at 4.[8] Plaintiff's concession that it lacks facts to allege that Charles River violated the law undermines Plaintiff's core assertion that it is "very likely" that Charles River bought illegal wild-caught macaques. Opp. 5; *see id.* 6, 13–14, 15, 17. Plaintiff claims that Charles River faced an increased risk of "heightened legal scrutiny" and supply disruption (*e.g.*, Compl. ¶¶ 13, 142, 144, 146, 148, 150, 162), but pleads no facts showing Charles River obtained wild-caught macaques—much less that it *knew* it had done so, or had a duty to inform investors.[9]

Plaintiff's concession that it fails to plead that Charles River violated the law or knew of any violation also is fatal to its challenge to Charles River stated belief that it complied with law. Opp. 18–19; *see In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 168 (S.D.N.Y. 2023)

---

[8] The Complaint also cites the guilty plea of an OBRC executive for making false statements to the FWS in the course of an investigation into smuggling. Compl. ¶¶ 21, 23, 232–233. But that is not probative of smuggling, much less smuggling involving Charles River.

[9] Plaintiff also advances the tautology that the alleged likelihood Charles River obtained wild-caught macaques increased the risk that "non-preferred" suppliers shipped it "animals that were not purpose-bred." *Id.*

(failure to allege legal violation was "fata[l]" to challenge to issuer's belief it complied with law).[10]

### D.    Other Statements Regarding Macaque Supplies

Plaintiff's failure to allege that Charles River illegally purchased wild-caught macaques, or knew of any violation of law, is fatal to Plaintiff's argument that the Company misled investors by saying that it was a provider of "purpose bred, SPF [specific-pathogen-free] large research models to the biomedical research community."  Compl. ¶¶ 73, 188, 258; *see* Opp. 15.[11]

Plaintiff's challenge to disclosures regarding supply chain concentration and macaque demand or inventory (Opp. 15–18) fails for the same reasons as its other arguments predicated on Charles River's supposed use of "non-preferred" suppliers.  Further, Plaintiff acknowledges that Charles River was "sourcing products from multiple countries," as up to 40% of Charles River's supply was not from Cambodia.  Opp. 15–16; *see* Compl. ¶¶ 29, 88, 134, 138.[12]

## II.    PLAINTIFF FAILS TO PLEAD AN INTENT TO DEFRAUD

The Complaint lacks any of the typical indicia used to satisfy the heightened pleading standard for scienter.  Mem. 18.  Lacking well-pled allegations that Mr. Foster or Mr. Smith knowingly sought to defraud investors, Plaintiff asks the Court to infer scienter based on Mr. Foster's and Mr. Smith's stock sales during the alleged class period, but First Circuit case law and Plaintiff's own admissions foreclose any "strong inference" of an intent to defraud.

---

[10] The statements in Charles River's codes of conduct—e.g., that the Company has to "comply with all applicable laws and regulations," Compl. ¶ 200—are too broad to be actionable.  Mem. 18.  By contrast, the code of conduct in the case cited by Plaintiff was far more specific.  *City of Fort Lauderdale Police & Firefighters' Ret. Sys. v. Pegasystems Inc.*, 2023 WL 4706741, at *1 (D. Mass. July 24, 2023) ("[T]he Code of Conduct Statement is not 'aspirational.'  Instead, it describes with specificity a course of conduct that Pega promised to abjure.").

[11] This allegation suffers from an independent flaw: this disclosure expressly describes Charles River's Research Models (RMS) business, which is distinct from the Discovery and Safety Assessment (DSA) business that sources macaques.  Compl. ¶ 71.  No reasonable investor would have read this disclosure as a representation about every macaque that DSA sources from Cambodia.

[12] Unlike in *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 609 (E.D. Va. 2015), where a federal investigation into the issuer, executive resignations, and a national television broadcast all revealed that the issuer propped up its stock price by relying on illegal suppliers, here no alleged facts plausibly show that Charles River received macaques in violation of any law.  For this reason, Charles River's disclosures were not misleading.

### A.    Plaintiff Fails to Plead Scienter Through Stock Sales and Gifts

As Defendants have shown, the Complaint lacks facts giving rise to a strong inference that Mr. Foster and Mr. Smith lied to investors in order to sell their shares of Charles River stock at inflated prices, including because the crucial context of their trading "before and after the class period," is missing. *Lenartz v. Am. Superconductor Corp.*, 879 F. Supp. 2d 167, 186 (D. Mass. 2012); *see City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 761 (1st Cir. 2011); Mem. 18–19.  In response, Plaintiff asserts that the amount of stock sold by Mr. Foster and Mr. Smith was "unusual" (Opp. 21), but without any reference to their trading outside the class period, and Plaintiff cites no decision relying solely, or even primarily, on the size of insider trades to show scienter. *Brumbaugh*, 416 F. Supp. 2d at 254 (deeming as "ancillary" allegations of "insider trading"); *Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 92 (1st Cir. 2008) ("The insider trading claims as alleged are on the weaker end of the spectrum.").

Indeed, far from suggesting an insider "sell-off" ahead of bad news, Mr. Foster and Mr. Smith *increased* their holdings in Charles River during the class period with Mr. Smith's holdings increasing by 35%.[13]  These increases negate any inference that, at the same time, these Defendants were seeking to defraud investors.  *See Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 246 (1st Cir. 2015) (reasoning that 9.2% increase in insider's stock holdings during class period "negates any inference" of "motive to artificially inflate" stock price).

Nor does the timing of Mr. Foster's and Mr. Smith's stock sales raise any suspicions, much less a strong inference of scienter.  There are no allegations indicating that Mr. Foster or Mr. Smith approved or issued false statements so as to be able to sell shares at inflated prices.  Plaintiff asserts that "the sales occurred around the time of their misrepresentations" and "shortly before the stock

---

[13] Compl. ¶ 65 (alleging that Mr. Foster class-period holdings increased 4% from 337,915 to 350,198 shares); *id*. ¶ 67 (alleging that Mr. Smith's class-period holdings from 20,475 to 27,725 shares).

crashed." Opp. 21. But the frequency of their sales and gifts (32 during the alleged class period) (Compl. at 9 (chart)) defeats any suggestion that they were motivated by specific outside developments or disclosures. *Id.* ¶¶ 23–24. *See In re Wayfair, Inc. Sec. Litig.*, 471 F. Supp. 3d 332, 347 (D. Mass. 2020) ("Given the frequency of Defendants' trades, it is essentially meaningless to say their sales were made 'within a few days' of a given date."). The Complaint fails to suggest that the timing of the sales "uniquely aligned" with the alleged misstatements. *Quinones v. Frequency Therapeutics, Inc.*, 665 F. Supp. 3d 156, 177 (D. Mass. 2023). Moreover, sales at times when a stock is rising in price are "hardly surprising" and "further undermin[e] an inference of scienter." *Frequency Therapeutics*, 665 F. Supp. 3d at 175; *see also Loc. No. 8 IBEW Ret. Plan v. Vertex Pharms. Inc.*, 140 F. Supp. 3d 120, 136 (D. Mass. 2015) ("[T]here is nothing unusual, or necessarily suspicious, about insider sales during periods of rapid stock price increases."), *aff'd*, 838 F.3d 76 (1st Cir. 2016); *Wayfair*, 471 F. Supp. 3d 332, 348 (D. Mass. 2020) (reasoning that "perfectly natural" insider sales as stock price rose are not alone "material evidence of scienter").[14]

### B.    Plaintiff's Other Allegations Likewise Fail to Plead Scienter

Plaintiff's backup theories of scienter fare no better. Plaintiff baldly asserts that Charles River and Mr. Foster knew on November 30, 2022 that the Company had obtained macaques from Vanny Cambodia and had commercial ties to Vanny Group executives. Opp. 22. But as described above, Plaintiff has not pled facts showing that any Vanny-related statements were false. *Auto. Indus. Pension Tr. Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (no scienter absent sufficient allegations that executive's statement was false). And again, Mr. Foster continued to have reason to believe after the FWS had blocked a shipment from KF Cambodia on September 21,

---

[14] Plaintiff does not plausibly allege that Mr. Foster or Mr. Smith violated Charles River's insider trading policy (Opp. 21), which bars employees from selling or buying the Company's stock while possessing material, non-public information about the Company. Compl. ¶ 389. Just as Plaintiff fails to allege that Mr. Foster or Mr. Smith made any false statement, Plaintiff fails to allege that they traded on material information not disclosed to the public.

11

2022, that Charles River could continue to source macaques from Cambodia—indeed, Charles River *did* continue sourcing macaques from KF Cambodia and other suppliers. *See supra* at 8. His statements at this time supply no strong inference of scienter, because Plaintiff fails to plead that they were false when made, much less knowingly false and made with an intent to defraud.

Lacking well-pled allegations that Mr. Foster or Mr. Smith knew of facts contradicting their public statements, Plaintiff falls back on generalized allegations about the importance of Charles River's macaque supply chain and its DSA studies business. Opp. 23–24. These sort of "core operations" allegations fail where, as here, "the evidence does not establish that, at the time the challenged statements were made, there existed reasonably accessible data within the company materially contradicting those statements." *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 44 (1st Cir. 2017). The fact of ongoing government investigations did not mean that Charles River's suppliers would stop importing Cambodian macaques—to the contrary, OBRC and Envigo continued to import macaques into October and November 2022. *Compare* Compl. ¶¶ 25, 27 (Envigo and OBRC received subpoenas in June 2021) *with id.* at 9 (chart showing alleged Envigo and OBRC imports through October 2022 and November 2022, respectively).[15]

Finally, Plaintiff falls back on allegations about the constraints on growing a purpose-bred population of macaques as a reason to suspect that Cambodia was exporting wild macaques. Opp. 24. But this alleged "gestation-period" constraint applies to wild macaques added to existing breeding stocks. Compl. ¶¶ 117–123.[16] Plaintiff does not plead the number of captive breeders and captive-bred offspring prior to Cambodia's increase in exports; thus, the Complaint cannot

---

[15] A government investigation of a defendant is "insufficient in and of itself" to establish scienter. *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 114 (D. Mass. 2014). Plaintiff's theory is even further afield: Plaintiff seeks a similar inference from a government investigation of the defendant's supplier.

[16] Charles River's statement about the gestation period not only post-dates the class period, but lacks any context indicating that it relates to the scale-up of Cambodian facilities after 2018. Compl. ¶¶ 16, 122, 357.

establish that Cambodia's captive stock could not have supported its exports.  Mem. 20.  Plaintiff's

speculation that exports already had consumed Cambodia's entire captive-breeding capacity is

mere conjectural guesswork and fails to establish any "red flag," much less a strong basis for in-

ferring that Charles River "must have known" that its own suppliers were exporting wild-caught

macaques and that its disclosure were therefore knowingly and intentionally false.

## III.    PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

None of the five allegedly corrective disclosures revealed that any of Charles River's prior

statements had been false or misleading.  Mem. 21–23.[17]  None of the alleged developments that

Plaintiff asserts caused the price of Charles River's stock to fall was causally related to any mis-

statement or omission concerning "non-preferred" suppliers, and therefore none "reveal[ed] to the

market [a] pertinent truth that was previously concealed or obscured by the company's fraud."

*Mass. Ret. Sys. v. CVS Caremark Corp.*, 716 F.3d 229, 237 (1st Cir. 2013); *supra* at 4–5.

***November 16, 2022 unsealing of Vanny indictment**.*  Plaintiff admits that the Vanny in-

dictment revealed nothing about *Charles River's* legal compliance.  Opp. 26.  Nor did it "plausibly

revea[l]" that Charles River misled investors about the risks associated with Cambodian suppliers.

*CVS Caremark*, 716 F.3d at 240.  The indictment did not name Charles River—much less "reveal"

that either Vanny Cambodia or the unindicted co-conspirators supplied Charles River.  Compl.

¶¶ 315–316.  Analysts saw nothing in the indictment questioning Charles River's conduct.  Rather,

they correctly viewed it as a sign of potential problems with imports of macaques from Cambo-

dia—the precise risk that Charles River had expressly warned about.  *See Metabolix*, 943 F. Supp.

2d at 275 (finding no loss causation where stock price dropped "as a result of … a risk [defendant]

---

[17] Plaintiff is wrong that its loss causation allegations are subject to Rule 8 notice pleading (Opp. 25), but it not only fails Rule 9(b) but also Rule 8's lower standard.  *Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 274 (D. Mass. 2013) (holding "Rule 9(b) governs loss causation pleading" but allegations at issue failed to satisfy Rule 8).

repeatedly and regularly disclosed"); *Pizzuto v. Homology Meds., Inc.*, 2024 WL 1436025, at \*19 (D. Mass. Mar. 31, 2024) (finding no loss causation from materialization of risk that defendant repeatedly had warned about); *see generally CVS Caremark*, 716 F.3d at 243 (court can consider analyst reports in ruling on loss causation).

*November 30, 2022 disclosures*.  Plaintiff asserts that Charles River's disclosures on November 30, 2022 revealed that Cambodia was Charles River's "primary" source of macaques, and that Charles River would struggle to source macaques from Cambodia.  Opp. 26.  But Plaintiff fails to identify any previous statement "relate[d] to the same subject matter" that was corrected by this disclosure—and hence fails to plead any loss to Plaintiff from any prior statement by Charles River.  Charles River's statement may have been regarded as bad news, but it was not a corrective disclosure and thus cannot support Plaintiff's securities fraud claim.  *CVS Caremark*, 716 F.3d at 240; *see also Macquarie*, 2024 WL 1588706, at \*5 (pure omissions are not actionable).

*January 12, 2023 Jefferies analyst report*.  The report's conjecture that Charles River must have received macaques originating from Vanny Cambodia (Compl. ¶ 338) was not corrective because it did not even purport to refute Charles River's statements that it lacked "direct supply contracts" and, allegedly, "direct contacts" with Vanny Cambodia.  The report did not contradict or correct any prior statement by Charles River and thus cannot establish loss causation.  *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 89, 94–95 (1st Cir. 2014) (disclosures that "provide gloss on public information" are not corrective).

*February 22, 2023 disclosure*. Plaintiff concedes that loss causation cannot rest on the announcement of a government inquiry (Mem. 22–23), but argues that "more than the DOJ and FWS investigation was disclosed" on February 22, 2023 (Opp. 28 n.23) and points to Charles River's voluntary suspension of shipments of macaques from Cambodia, its resulting decreased

14

financial projections, and its decision to continue to care for certain macaques from Cambodia. Compl. ¶¶ 47–48. But none of those events were specific to "non-preferred" suppliers, and instead involved either all Cambodian suppliers (the supply interruption) or KF Cambodia (the FWS refusal to clear shipments and the DOJ investigation). Further, Charles River had previously warned investors, in November 2022, that it expected to have difficulty sourcing macaques from Cambodia, and that future supply chain difficulties could affect its financial performance.[18]

*March 15, 2023 statement*.  Mr. Foster's statement that Charles River "to some extent historically" used "brokers that get animals from wherever" that "[w]e prefer not to use" (Compl. ¶ 348) was not a corrective disclosure. It did not contradict a prior representation by Charles River about sourcing macaques. Loss causation requires facts "*connect[ing]* the current ... negative information to [an] earlier" misrepresentation. *Metabolix*, 943 F. Supp. 2d at 273. There is no basis to deem Mr. Foster's statement material for any reason, because there is no allegation that Charles River relied on brokers it "prefer[red] not to use." Indeed, it had voluntarily halted *all* imports from Cambodia, including from its "preferred" vendors. No alleged fact ties using "brokers" noted by Mr. Foster to any inquiry or supply disruption or projected impact on the Company's performance. Thus, there is no basis to link his statement to any claimed "loss" to Plaintiff as a Charles River investor. *See Urman v. Novelos Therapeutics, Inc.*, 867 F. Supp. 2d 190, 198 (D. Mass. 2012) (a disclosure that is "'related' in the colloquial sense" to alleged misstatement may lack a "nexus … strong enough to satisfy the PSLRA's exacting proximate causation standard").[19]

---

[18] Plaintiff's cases (Opp. 28) confirm that the February 22, 2023 disclosure was not corrective. One case involves the rare circumstances, not present here, in which a government inquiry may rise to the level of revealing past fraud. *Brumbaugh*, 416 F. Supp. 2d at 247 (finding corrective disclosure based on SEC investigation into veracity of statements alleged to be false). The other shows that a corrective disclosure must entail much more than announcing a government investigation. *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 324 (5th Cir. 2014) (finding that short-seller reports, executive resignations, front-page newspaper articles and poor earnings reports—along with a government investigation—"collectively constitute and culminate in a corrective disclosure").

[19] Plaintiff's Section 20(A) claims should also be dismissed. Even if Plaintiff is correct that "culpable participation" is not required, *see* Opp. 28, Plaintiff fails to plead a primary violation of Section 10(b). Mem. 24.

15

**CONCLUSION**

For the foregoing reasons, and those stated in Defendants' moving brief, Defendants respectfully request that the Court dismiss Plaintiff's Complaint with prejudice.

Dated: April 24, 2024

By:    /s/ *Mara Theophila*
Mara Theophila (BBO #704763)
MCDERMOTT WILL & EMERY LLP
200 Clarendon Street, Floor 58
Boston, Massachusetts 02116
(617) 535-4000
mtheophila@mwe.com

Charles S. Duggan (admitted *pro hac vice*)
David B. Toscano (admitted *pro hac vice*)
Luca Marzorati (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000
charles.duggan@davispolk.com
david.toscano@davispolk.com
luca.marzorati@davispolk.com

*Attorneys for Defendants Charles River Laboratories International, Inc., James C. Foster, and David R. Smith*

16

**CERTIFICATE OF SERVICE**

I hereby certify that this reply memorandum, filed through the Court's ECF system, will be sent electronically to the registered participants in this matter on the Notice of Electronic Filing (NEF).

/s/ *Mara Theophila*
Mara Theophila (BBO #704763)

17