IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STATE TEACHERS RETIREMENT SYSTEM OF OHIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES RIVER LABORATORIES INTERNATIONAL, INC., JAMES C. FOSTER and DAVID R. SMITH,<br><br>Defendants. | Case No.: 1:23-cv-11132<br><br>**CLASS ACTION** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO WITHDRAW AND MOTION TO SUBSTITUTE LEAD PLAINTIFF**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT .................................................................................................................. 4

    A. Substitution of Lead Plaintiff is Proper in this Action.............................................4

    B. The Motion is Timely and STRS Ohio's Withdrawal and Oklahoma Firefighters' Intervention and Substitution Will Not Prejudice Defendants ...........7

    C. The Substitution of Oklahoma Firefighters Does Not Trigger the PSLRA's Lead Plaintiff Selection Process ............................................................................10

III. CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cheng v. Activision Blizzard, Inc.*,
  2022 WL 304672 (C.D. Cal. Jan. 30, 2022) .......................................................................... 10

*Constr. Laborers Pension Tr. for S. California v. Rocket Companies, Inc.*,
  2025 WL 1139113 (E.D. Mich. Apr. 17, 2025) ..................................................................... 11

*Coopersmith v. Lehman Bhd., Inc.*,
  344 F. Supp. 2d 783 (D. Mass. 2004) ................................................................................... 11

*Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*,
  778 F.3d 228 (1st Cir. 2015) ............................................................................................ 9, 12

*Gulbankian v. MW Mfrs., Inc.*,
  2014 WL 1878441 (D. Mass. May 9, 2014) .......................................................................... 9

*Hochendoner v. Genzyme Corp.*,
  823 F.3d 724 (1st Cir. 2016) .................................................................................................. 7

*In re Barclays Bank PLC Sec. Litig.*,
  2014 WL 12783234 (S.D.N.Y. June 2, 2014) ........................................................................ 5

*In re Impax Labs., Inc. Sec. Litig.*,
  2008 WL 1766943 (N.D. Cal. Apr. 17, 2008) .................................................................... 2, 6

*In re Initial Pub. Offering Sec. Litig.*,
  214 F.R.D. 117 (S.D.N.Y. 2002) ......................................................................................... 11

*In re Intuniv Antitrust Litig.*,
  2023 WL 2662173 (D. Mass. Mar. 15, 2023) ........................................................................ 9

*In re Lernout & Hauspie Sec. Litig.*,
  138 F. Supp. 2d 39 (D. Mass. 2001) .................................................................................... 11

*In re NYSE Specialists Sec. Litig.*,
  240 F.R.D. 128 (S.D.N.Y. 2007) ........................................................................................... 5

*In re Portal Software, Inc. Sec. Litig.*,
  2005 WL 8179740 (N.D. Cal. Mar. 9, 2005) .................................................................... 3, 10

*In re SLM Corp. Sec. Litig.*,
  258 F.R.D. 112 (S.D.N.Y. 2009) ........................................................................................... 7

*In re Sonus Networks, Inc. Sec. Litig.*,
   229 F.R.D. 339 (D. Mass. 2005) ............................................................................................. 9

*In re Stone Energy Corp. Secs. Litig*,
   2009 WL 3232786 (W.D. La. Sept. 30, 2009) ...................................................................... 6, 9

*Johnson v. CBD Energy Ltd.*,
   2016 WL 3654657 (S.D. Tex. July 6, 2016) .......................................................................... 11

*Leech v. Brooks Automation, Inc.*,
   2006 WL 3690736 (D. Mass. Dec. 13, 2006) ........................................................................ 11

*Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
   2024 WL 1674125 (5th Cir. Apr. 18, 2024) ............................................................................ 7

*Perez v. Target Corp.*,
   2023 WL 8379119 (D. Minn. Nov. 13, 2023) ................................................................. 2, 6, 8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................................. 7

*State Tchrs. Ret. Sys. of Ohio v. Charles River Lab's Int'l, Inc.*,
   2025 WL 2374498 (1st Cir. Aug. 15, 2025) ............................................................................ 1

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................................. 7

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
   2021 WL 2551403 (D. Colo. Mar. 17, 2021) ..................................................................... 3, 11

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
   146 F. Supp. 3d 337 (D. Mass. 2015) ...................................................................................... 9

*Yan v. Rewalk Robotics Ltd.*,
   973 F.3d 22 (1st Cir. 2020) ............................................................................................. passim

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*,
   231 F.3d 1215 (9th Cir. 2000) ................................................................................................. 6

**STATUTES**

15 U.S.C. §78u-4(a) ..................................................................................................................... 10

Lead Plaintiff State Teachers Retirement System of Ohio ("STRS Ohio" or "Lead Plaintiff") and Oklahoma Firefighters Pension and Retirement System ("Oklahoma Firefighters" and, together with STRS Ohio, "Plaintiffs") respectfully submit this reply in further support of their Motion to Withdraw and Motion to Substitute Lead Plaintiff (ECF No. 68, the "Motion").[1]

I. **PRELIMINARY STATEMENT**

Defendants' Opposition is a transparent attempt to exit this litigation at the pleading stage despite the First Circuit's decision that Defendants' November 2022 statements to investors were materially false and misleading. *State Tchrs. Ret. Sys. of Ohio v. Charles River Lab's Int'l, Inc.*, 2025 WL 2374498, at *1 (1st Cir. Aug. 15, 2025). Because STRS Ohio lacked statutory standing after the First Circuit's decision, and in keeping with its fiduciary duty to protect the interests of putative class members, STRS Ohio expeditiously sought its withdrawal as Lead Plaintiff and the substitution of Oklahoma Firefighters, a sophisticated institutional investor with standing to pursue the Exchange Act claims that the First Circuit deemed actionable. As set forth in the Motion, withdrawal and substitution under Rule 21 is governed by the liberal standard afforded under Rule 15: a request to add or drop a party should be granted unless it causes a substantial delay in the case or prejudices a party to the action. No such delay or prejudice is present here.

In response to Plaintiffs' Motion, Defendants lodge a series of convoluted arguments that can be swiftly rejected. *First*, Defendants argue that, rather than granting Plaintiffs' Motion, the Court should instead outright dismiss the entire action for lack of subject matter jurisdiction. In so arguing, Defendants ask the Court to ignore as supposedly mere "dicta" the directly on-point

---

[1] Unless otherwise noted, all terms herein are defined as in the parties' Joint Statement and Proposal (ECF No. 66) or Lead Plaintiff's and Oklahoma Firefighters' Memorandum of Law in support of the Motion, ECF No. 69 ("Memo"). Citations to Defendants' Memorandum of Law in response to the Motion (ECF No. 73) shall be referenced as "Opp. at __." Unless otherwise noted, all emphasis is added and internal citations are omitted.

1

decision in *Yan v. Rewalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020). However, in *Yan*, the First Circuit explicitly rejected the exact same argument that Defendants advance here: that "because [STRS Ohio] lacked standing, [the court] lacked jurisdiction to consider [STRS Ohio's] request to amend the complaint to add [Oklahoma Firefighters] as a named plaintiff to press the Exchange Act claims on behalf of a putative class . . . ***we disagree with that reasoning***." *Id.* at 27. Tellingly, Defendants not only fail to meaningfully distinguish the First Circuit's thorough reasoning in *Yan*, but also fail to cite a single authority in which a district court dismissed a securities class action with prejudice under the circumstances present here. These failures stand in stark contrast to the numerous courts around the country that, when faced with standing problems for the lead plaintiff, have allowed the lead plaintiff to withdraw and substitute in new lead plaintiffs who did have the requisite standing. *See, e.g.*, *Perez v. Target Corp.*, 2023 WL 8379119, at *2 (D. Minn. Nov. 13, 2023); *In re Barclays Bank PLC Sec. Litig.*, Case No. 1:09-cv-01989-PAC, ECF No. 91 (S.D.N.Y. July 9, 2014); *In re Impax Labs., Inc. Sec. Litig.*, 2008 WL 1766943 (N.D. Cal. Apr. 17, 2008); *see also In re Rackable Sys., Inc. Sec. Litig.*, Case No. 4:09-cv-00222-CW (N.D. Cal. Mar. 22, 2010), Dkt. No. 53 (permitting lead plaintiff withdrawal and substitution under Rule 21).

*Second*, Defendants stretch the bounds of credulity by arguing that Oklahoma Firefighters operated with "undue delay" because it "should have known over two years ago that it had an interest in this litigation" that STRS Ohio lacks. Opp. at 6, 9. This argument is meritless. Notably, Defendants do not say what exactly Oklahoma Firefighters should have done here, and the notion that Oklahoma Firefighters should have anticipated that the Court would dismiss this action and that the First Circuit's later partial reversal would deprive the Lead Plaintiff of standing is nonsensical. In truth, rather than delay, Plaintiffs took immediate steps following the First Circuit's decision to protect the interests of putative class members by promptly filing the Joint

2

Statement and Proposal just two weeks after the First Circuit's mandate was issued.

*Third*, it is *Defendants* that push for delay, as their fallback position is to continue to delay the prosecution of this action by arguing for the formal reopening of the lead plaintiff selection process. However, nothing in the language of the PSLRA requires an additional lead plaintiff appointment proceeding. Instead, courts routinely find that "where a new lead plaintiff is willing to step forward, there is no need to start the process anew . . ." *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, 2021 WL 2551403, at *6 (D. Colo. Mar. 17, 2021), report and recommendation adopted, 2021 WL 2551355 (D. Colo. June 7, 2021); *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 8179740, at *4 (N.D. Cal. Mar. 9, 2005) ("It would turn securities litigation into a game of snakes and ladders to hold that any time a new plaintiff is added, the action must 'go back to square one' and recommence the PSLRA lead plaintiff selection process").

Here, the substitution of Oklahoma Firefighters as Lead Plaintiff is particularly appropriate given that Oklahoma Firefighters is precisely the type of sophisticated institutional investor that Congress intended to lead securities class actions. Indeed, Oklahoma Firefighters possesses a substantial financial interest in the outcome of the litigation; it has achieved exceptional results successfully leading securities class actions; and it has selected Kaplan Fox and Saxena White as its chosen Lead Counsel—two firms with proven track records in successfully litigating securities class actions (including as Co-Lead Counsel) and who will ensure the beneficial continuity of representation for the putative class.

For the reasons set forth in their initial moving brief and herein, Plaintiffs respectfully request that the Court grant STRS Ohio's motion to withdraw as Lead Plaintiff; appoint Oklahoma Firefighters as substitute Lead Plaintiff; and approve Plaintiffs' choice of Saxena White and Kaplan Fox as Co-Lead Counsel.

3

## II.  ARGUMENT

### A.  Substitution of Lead Plaintiff is Proper in this Action

Defendants assert that the Court should dismiss this action for lack of subject matter jurisdiction because STRS Ohio lacks standing. Opp. at 2-5. Defendants' argument is directly contradicted by the First Circuit's decision in *Yan v. Rewalk Robotics Ltd.*, 973 F.3d 22 (1st Cir. 2020). In *Yan*, after the district court rejected the substitution of a new plaintiff because the original plaintiff was left with no standing, the First Circuit "***disagree[d] with that reasoning***," holding that while the lead plaintiff's "standing may well be insufficient to allow him to serve as a class representative over the Exchange Act claims, ***nothing in rule or reason says that the district court could not welcome on board another litigant who does have standing to serve as a class representative on that count***." *Id*. at 38.

While Defendants characterize the First Circuit's holding as mere dicta that this Court should ignore, the First Circuit thoroughly analyzed the standing issue and explicitly recognized that Plaintiffs' requested relief here (allowing a substitute plaintiff with standing under the Exchange Act to amend the complaint) is appropriate: "courts may authorize amendment of a complaint under Rule 15 even in the absence of jurisdiction . . . We also see no reason why this permissiveness does not extend to motions seeking to add a named party asserting the exact same claim that is already pleaded in the complaint." *Id*. at 37. Indeed, the First Circuit directly addressed the fallacy of Defendants' argument here, stating that while "[s]ome courts nevertheless seem to think that the foregoing rules somehow do not apply in a class action when the original plaintiff is found to lack standing and timely moves to add a new plaintiff who does have standing . . . [t]he simplest response to that view is that there is absolutely nothing at all in Rule 23 that even hints at such a bespoke modification of the usual amendment rules in a class action." *Id*. at 38.

4

Defendants' attempt to distinguish *Yan* because the district court and the First Circuit were "construing a federal statute" falls flat. Opp. at 4. That the court in *Yan* found the lead plaintiff lacked statutory standing "at least due in part to the 'statutory safe harbor'" is irrelevant. The key question for the First Circuit in *Yan*—and the Court here—was whether courts may authorize amendment of a complaint under Rule 15 when, for whatever reason, a plaintiff loses standing. In *Yan*, the First Circuit made crystal clear that under such circumstances a motion to amend to substitute a lead plaintiff with standing is expressly authorized by the Federal Rules.

Similarly, the Second Circuit decision in *In re Barclays Bank PLC Sec. Litig.*, 2014 WL 12783234 (S.D.N.Y. June 2, 2014), is also instructive. In that securities class action, the district court dismissed the case with prejudice. On appeal, the Second Circuit affirmed the dismissal of the majority of the case, but reversed the dismissal of one of the offerings at issue, remanding the case "to give the Lead Plaintiffs the opportunity, with respect to the Series 5 Offering, to proceed with the claims in the Proposed Complaint and with a new Lead Plaintiff." *Barclays*, 2014 WL 12783234, at *1. While the original lead plaintiffs did not have standing to assert that claim, the district court rejected the same argument that Defendants make here and allowed the substitution of new lead plaintiffs who did have standing, holding that "[a]s to the appointment of new Lead Plaintiffs, Defendants provide no authority suggesting that the court must dismiss Plaintiffs' claims merely because they have not yet formally substituted" new lead plaintiffs. *Id.* at *2; *In re Barclays Bank PLC Sec. Litig.*, Case No. 1:09-cv-01989-PAC, ECF No. 91 (S.D.N.Y. July 9, 2014).

Consistent with these decisions, courts nationwide have repeatedly recognized that the need to replace lead plaintiffs may arise during litigation, and have held that it is entirely within a court's authority and discretion to allow the substitution of a lead plaintiff. *See e.g.*, *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 133 (S.D.N.Y. 2007) ("courts have acknowledged the

5

ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of a securities class action"); *Target*, 2023 WL 8379119, at *1 ("The Court plays an important role of protector of the absentee class members' interests; its decision to appoint a lead plaintiff and class counsel to advocate for them places a fiduciary burden on the Court to ensure that their interests receive adequate representation"); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("Rule 23 orders may be altered or amended as may be desirable from time to time . . . [i]t is not inconceivable that a lead plaintiff appointed originally might turn out to be an inadequate class representative and that a change might have to be made. Ordering such a change would be consistent with the district court's *continuing* duty to see that a class is adequately represented by counsel.") (emphasis in original); *In re Stone Energy Corp. Secs. Litig*, 2009 WL 3232786 (W.D. La. Sept. 30, 2009) (rejecting argument that a lead plaintiff's lack of standing "requires dismissal of the entire case because there is no legally cognizable party to continue pursuing the action," and instead permitting lead plaintiff substitution because "dismissal of the entire consolidated suit would be both wasteful of judicial resources and of the parties' time, energy, and money spent litigating the case thus far which the Court must assume, based on the record, has been considerable").

Significantly, courts have repeatedly recognized the discretion to grant leave to substitute a new lead plaintiff under the exact circumstances present here: when the former lead plaintiff was found to lack standing. *See e.g.*, *Target*, 2023 WL 8379119, at *2 (appointing replacement lead plaintiff where the original lead plaintiff lost standing because "[t]he new putative class period is narrower than the initial period"); *Impax*, 2008 WL 1766943, at *8 ("In this case, the proposed new Lead Plaintiff is added not to merely aid the existing Lead Plaintiff but to replace Lead Plaintiff because it has been found to lack standing"). Indeed, a court should not dismiss a claim

6

for lack of standing where substitution of the real party in interest is necessary to avoid injustice, particularly when putative class members' interests are implicated. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) (substituting new lead plaintiffs due to an investment adviser's standing problem); *Oklahoma Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 2024 WL 1674125, at *5 (5th Cir. Apr. 18, 2024) ("even if Oklahoma Firefighters lacked Article III standing . . . this would not be dispositive of Key West's motion to intervene since Key West . . . would have Article III standing. . . At the time Key West filed its motion to intervene, the class certification had not been decided. Thus, it was a member of the putative class. The Supreme Court has provided greater protections to *putative* classes than independent third parties.").[2]

## B. The Motion is Timely and STRS Ohio's Withdrawal and Oklahoma Firefighters' Intervention and Substitution Will Not Prejudice Defendants

As Plaintiffs set forth in the Motion, intervention and substitution is governed by the standards of Rule 15, which the First Circuit held is "the mechanism ... used to substitute in the party with standing to press the claim." *Yan*, 973 F.3d at 37. The criteria used to evaluate whether a Rule 15 motion is appropriate include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Id.* at 38. None of those factors are implicated in Plaintiffs' Motion.

---

[2] Defendants' cited authorities are easily distinguishable. For example, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021) focuses on standing for each individual class member, whereas here, the issue concerns the procedural flexibility in securities class actions to amend pleadings and substitute a lead plaintiff to preserve the class action, even if the original lead plaintiff lacks standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) concerns the Fair Credit Reporting Act, noting how it is "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." Defendants also miss the mark with *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 735-36 (1st Cir. 2016), as there, unlike here, "no motion to amend was made . . . the concern that the injuries to the plaintiffs were insufficiently pleaded was apparent from the outset."

Consistent with its fiduciary duty to protect the interests of the putative class, following the First Circuit's partial reversal, STRS Ohio took immediate steps to withdraw as Lead Plaintiff and substitute Oklahoma Firefighters—the antithesis of undue delay, bad faith or dilatory motive. *Target*, 2023 WL 8379119, at *1 ("It is certainly within the lead plaintiff['s] discretion and, perhaps more importantly, part of a lead plaintiff's responsibility to propose their own withdrawal and substitution should it be discovered that they may no longer adequately represent the interests of the purported plaintiff class"). The Motion is not the product of "repeated failures to cure deficiencies"—to the contrary, it is a sensible and entirely appropriate response to the First Circuit's decision. Moreover, Defendants do not face undue prejudice if the Motion is granted, as the Motion does not seek to enlarge or add any new claims, but merely seeks to substitute a new lead plaintiff asserting the same Exchange Act claims that were previously alleged and whose dismissal was partially reversed. *Yan*, 973 F.3d at 37 (no prejudice where substitution would not add new claims or cause defendants to assert new defenses). Because no discovery has occurred, allowing Oklahoma Firefighters to substitute as Lead Plaintiff will not delay the action or prejudice defendants. Finally, allowing Oklahoma Firefighters to amend the complaint is clearly not futile, as the First Circuit has already determined that Defendants' November 2022 statements were actionable, and the Court has entered a schedule that will govern the filing of a new complaint and the briefing of a motion to dismiss limited to the issue of loss causation. ECF No. 67.

Grasping at straws to oppose the Motion, Defendants resort to arguing that intervention and substitution should be denied (and the action dismissed) because Oklahoma Firefighters was purportedly on notice of STRS Ohio's standing issues since the inception of this litigation two years ago, and therefore Oklahoma Firefighters operated with "undue delay." Opp. at 6-7, 9-10. This is nonsense. To hear Defendants tell it, Oklahoma Firefighters should be faulted for failing

8

to predict with precision the future: Oklahoma Firefighters should have known two years ago that the district court would dismiss the action with prejudice, and thereafter, that the First Circuit's partial reversal would deprive the Court-appointed lead plaintiff of statutory standing.

No such clairvoyance is required, particularly in a class action where the Court-appointed Lead Plaintiff is charged with representing the interests of putative class members. *See In re Intuniv Antitrust Litig.*, 2023 WL 2662173, at *15 (D. Mass. Mar. 15, 2023) ("[T]he timeliness rules are more forgiving where the lawsuit is a class action and the intervenor is a putative or actual class member; unnamed class members may reasonably presume, at least until events prove the presumption inaccurate, that their interests are being adequately represented by the class representative"). Indeed, "[i]n cases where the potential intervenor's interest is, at least at the outset, subsumed by that of a representative litigant, the trigger requiring intervention does not occur until *it is apparent* that the representative no longer protects the intervenor's interest." *Id*. Given that STRS Ohio's lack of standing was not apparent until the First Circuit issued its opinion, the Motion is timely: "The proper means of addressing this problem is to simply substitute lead plaintiff. Class certification has not yet been addressed. Appointing a replacement recognizes the potential legitimacy of the underlying claims, works no prejudice on the putative class members, and conserves precious judicial resources." *Stone Energy*, 2009 WL 3232786, at *6.[3]

---

[3] Defendants' cases are inapt. For example, in *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 344 (D. Mass. 2015), the court denied leave to amend because the plaintiff "did not plead [] new information at an earlier stage of litigation." In *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015), plaintiff was on a "hopeless quest" to seek leave to amend to add new allegations "after the case ha[d] been dismissed." Furthermore, while the present action is only still at the pleading stage, Defendants' other authorities involved undue delay after class certification or settlement. *See Gulbankian v. MW Mfrs., Inc.*, 2014 WL 1878441, at *2 (D. Mass. May 9, 2014) (denying motion for intervention filed "on the eve of the hearing on preliminary approval" for undue delay); *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 345-46 (D. Mass. 2005) (denying intervention where class had been certified and

## C. The Substitution of Oklahoma Firefighters Does Not Trigger the PSLRA's Lead Plaintiff Selection Process

Emblematic of Defendants' "kitchen-sink" approach to their Opposition, Defendants' final argument is to embrace that which they accuse Oklahoma Firefighters of doing: delay. Indeed, despite the fact that this action has now been pending for over two years, Defendants seek to further delay the prosecution of the action by asserting that the PSLRA lead plaintiff selection process should be reopened. Defendants' self-serving argument is misplaced for several reasons.

*First*, the PSLRA is silent on this issue, as there is no requirement in the PSLRA that the lead plaintiff process be reopened when a lead plaintiff loses standing. *See* 15 U.S.C. §78u-4(a). "The absence of statutory lead-plaintiff mechanics for suits already in progress stands in stark contrast to the detailed mechanics . . . for suits that are only just beginning. This alone suggests that Congress contemplated invoking the PSLRA's lead plaintiff process only once—at the very beginning of the suit." *Portal Software*, 2005 WL 8179740, at *3.

*Second*, consistent with congressional intent and the efficient use of judicial and party resources, courts have routinely recognized that it is entirely within the court's discretion to allow the substitution of a qualified Lead Plaintiff with standing to pursue the putative class's claims. "The need to add representative plaintiffs may arise after a case has been initiated. It would turn securities litigation into a game of snakes and ladders to hold that any time a new plaintiff is added, the action must 'go back to square one' and recommence the PSLRA lead plaintiff selection process." *Portal Software*, 2005 WL 8179740, at *4. Accordingly, courts have consistently held

---

proposed intervenor missed a court-ordered deadline to file its motion). Defendants' reliance on *Cheng v. Activision Blizzard, Inc*., 2022 WL 304672, at *4 (C.D. Cal. Jan. 30, 2022) is misplaced. Unlike here, in *Cheng*, standing was not even an issue and the proposed intervenor had not offered "new ***material*** facts or a change of ***law***" to merit intervention. *Id*. at *3 (emphasis in original).

that, "where a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice." *Coopersmith v. Lehman Bhd., Inc.*, 344 F. Supp. 2d 783, 793 (D. Mass. 2004)[4]; *Farmland Partners Inc.*, 2021 WL 2551403, at *7 ("This court perceives little benefit to the class, the Parties, or the court by reopening the lead plaintiff appointment process at this stage of the proceedings, particularly given that this action is already over two years old."); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *6 (S.D. Tex. July 6, 2016) (it often does not make sense to "go back to square one and recommence the PSLRA lead plaintiff selection process").

*Third*, allowing the substitution of Oklahoma Firefighters is particularly appropriate here given that Oklahoma Firefighters is precisely the type of sophisticated institution that Congress intended to serve as Lead Plaintiff in securities class actions. *See In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (explaining that the PSLRA responded to congressional desire "to increase the likelihood that institutional investors will serve as lead plaintiffs"); *Leech v. Brooks Automation, Inc.*, 2006 WL 3690736, at *3 (D. Mass. Dec. 13, 2006) ("In general, courts have recognized that the PSLRA favors the selection of large institutional investors as lead plaintiff."). Indeed, Oklahoma Firefighters has a substantial financial interest in the outcome of the litigation. *See* Memo at 7; Fox Decl., Exs. A, B. In addition, Oklahoma Firefighters has extensive experience serving as lead plaintiff in securities class actions and has successfully recovered hundreds of millions of dollars on behalf of investor classes. *See*

---

[4] Notably, Defendants' own authority recognizes this principle. *See In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 n. 5 (S.D.N.Y. 2002); *see also Constr. Laborers Pension Tr. for S. California v. Rocket Companies, Inc.*, 2025 WL 1139113, at *13 n. 3 (E.D. Mich. Apr. 17, 2025) ("federal courts have refused to reopen PSLRA lead plaintiff proceedings").

*e.g., Wyatt v. El Paso Corp.*, No. H-02-2717 (S.D. Tex) ($285 million recovery); *In re Novo Nordisk Sec. Litig.*, No. 17-cv-209 (D.N.J.) ($100 million recovery); *Minneapolis Firefighters' Relief Ass'n. v. Medtronic, Inc.*, No. 08-cv 6324 (D. Minn.) ($85 million recovery).

Oklahoma Firefighters has also retained capable counsel who are experienced in securities class action litigation. Saxena White has successfully recovered billions of dollars in securities class actions and has successfully served as lead or co-lead counsel in numerous actions, including in a recent action in which Oklahoma Firefighters was sole Lead Plaintiff and Saxena White was sole Lead Counsel. *See Kellie Black v. Snap Inc. et al.*, 2:21-CV-08892 (C.D. Cal.) (proposed $65 million settlement); *see also In re Wilmington Trust Sec. Litig.,* No. 10-cv-0990-ER (D. Del.) ($210 million recovery, which represented the second-largest securities class action recovery in Delaware history); *In re Tower Group Int'l, Ltd. Sec. Litig.*, No. 13 cv-5852 (S.D.N.Y) ($20.5 million recovery, with Oklahoma Firefighters and Saxena White serving as co-lead counsel). Furthermore, to ensure continuity of representation, Oklahoma Firefighters has retained Kaplan Fox, who has litigated this case since its inception. Kaplan Fox has successfully recovered billions of dollars in securities class actions and has successfully served as lead or co-lead counsel in numerous actions, including in an action in which Oklahoma Firefighters served as a Lead Plaintiff. *See e.g., In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*, No. 09-MDL-2058 (S.D.N.Y.) ($2.425 billion recovery that included significant corporate governance reforms and stands as one of the largest securities class action settlements in history); *In re Rocket Fuel, Inc. Sec. Litig.*, Case No. 4:14-cv-03998-PJH-JCS (N.D. Cal.). Further ensuring that the putative class is adequately and efficiently represented, Saxena White and Kaplan Fox have experience successfully litigating securities class actions as co-lead counsel. *See Milbeck v. TrueCar, Inc.,*

No. 2:18-cv-02612-SVW, ECF No. 189 (C.D. Cal. May 26, 2020) (granting final approval to $28.25 million settlement).

## III. CONCLUSION

For the reasons set forth in the initial moving brief and the foregoing reasons, Lead Plaintiff STRS Ohio respectfully requests that the Court grant its motion to withdraw as Lead Plaintiff; appoint Oklahoma Firefighters as substitute Lead Plaintiff; and approve Saxena White and Kaplan Fox as Co-Lead Counsel.

Dated: November 6, 2025

Respectfully submitted,

By: */s/ Frederic S. Fox*
Frederic S. Fox (admitted *pro hac vice*)
Donald R. Hall (*pro hac vice* forthcoming)
Jeffrey P. Campisi (admitted *pro hac vice*)
**Kaplan Fox & Kilsheimer LLP**
800 Third Avenue, 38th Floor
New York, NY 10022
T: (212) 687-1980
F: (212) 687-7714
ffox@kaplanfox.com
jcampisi@kaplanfox.com

*Lead Counsel for Lead Plaintiff State Teachers Retirement System of Ohio, and Proposed Co-Lead Counsel for Oklahoma Firefighters and the Proposed Class*

Steven B. Singer (*pro hac vice* forthcoming)
**Saxena White P.A.**
10 Bank Street, Suite 882
White Plains, NY 10606
T: (914) 437-8551
F: (888) 631-3611
ssinger@saxenawhite.com

Maya Saxena (*pro hac vice* forthcoming)
Lester R. Hooker (*pro hac vice* forthcoming)
**Saxena White P.A.**
7777 Glades Road, Suite 300
Boca Raton, FL 33434
T: (561) 394-3399

        F: (866) 290-1291

        *Proposed Co-Lead Counsel for Oklahoma Firefighters and the Proposed Class*

        Edward F. Haber (BBO# 215620)
        Patrick J. Vallely (BBO# 663866)
        **Shapiro Haber & Urmy LLP**
        One Boston Place, Suite 2600
        Boston, MA 02108
        T: (617) 439-3939
        F: (617) 439-0134
        ehaber@shulaw.com
        pvallely@shulaw.com
        ndill@shulaw.com

        *Liaison Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Frederic S. Fox*
Frederic S. Fox